1            IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF OREGON

3                   PORTLAND DIVISION

4

5    ANDREW CHOI,                    )
                                     )
6                   Plaintiff,       )  No. 3:17-cv-02064-MO
                                     )
7              vs.                   )  July 20, 2018
                                     )
8    REED INSTITUTE, doing business  )  Portland, Oregon
     as REED COLLEGE; and MARIELA    )
9    SZWARCBERG DABY, individually,  )
                                     )
10   _____Defendants.____ )

11

12

13

14              TRANSCRIPT OF PROCEEDINGS

15                  (Oral Argument)

16

17        BEFORE THE HONORABLE MICHAEL W. MOSMAN

18          UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23   Court Reporter:          Ryan White, RMR, CRR, CSR/CCR
                              United States District Courthouse
24                            1000 SW 3rd Avenue, Room 301
                              Portland, Oregon 97204
25                            (503) 326-8184

```
 1                              APPEARANCES

 2

 3   For the Plaintiff:         LAW OFFICE OF DANIELA NANAU, PC
                                By:  DANIELA E. NANAU (via telephone)
 4                              dn@danielananau.com
                                89-03 Rutledge Avenue
 5                              Glendale, New York 11385
                                (888) 404-4975
 6
                                BRAGUE LAW FIRM
 7                              By:  KEVIN C. BRAGUE
                                kevin@braguelawfirm.com
 8                              1205 NW 25th Avenue
                                Portland, Oregon 97210
 9                              (503) 922-2243

10   For the Defendant          BARRAN LIEBMAN LLP
     Reed Institute:            By:  PAULA A. BARRAN
11                              rhunt@barran.com
                                601 SW 2nd Avenue, Suite 2300
12                              Portland, Oregon 97204
                                (503) 228-0500
13
     For the Defendant          MILLER NASH GRAHAM & DUNN LLP
14   Szwarcberg Daby:           By:  PK RUNKLES-PEARSON
                                p.k.runkles-pearson@millernash.com
15                              111 SW 5th Avenue, Suite 3400
                                Portland, Oregon 97204
16                              (503) 205-2314

17

18

19

20

21

22

23

24

25
```

1          (July 20, 2018; 2:00 p.m.)

2

3               P R O C E E D I N G S

4

5          THE CLERK:  We are here today for oral argument in

6 case 3:17-cv-2064-MO, Choi v. Reed Institute, et al.

7          Counsel, please state your name for the record.

8          MS. NANAU:  This is Daniela Nanau for the plaintiff,

9 Andrew Choi.

10         MR. BRAGUE:  Kevin Brague on behalf of plaintiff,

11 Andrew Choi.

12         MS. RUNKLES-PEARSON:  PK Runkles-Pearson on behalf of

13 Professor Mariela Szwarcberg Daby.

14         MS. BARRAN:  Paula Barran on behalf of the Reed

15 Institute.

16         THE COURT:  Thank you all for being here.

17         I'd like to take these sort of thematically.  So we'll

18 start with claim 1 and 2 under Title 11 on the statue of

19 limitations issue, and I'll start each time with the moving

20 party.

21         MS. BARRAN:  Thank you, Your Honor.

22         On the statute of limitations issue, there are some

23 things that we know from the complaint and that we know as a

24 matter of law.  I don't think that there is any objection from

25 the plaintiff to our argument that this is a two-year statute.

1    The case law is clear.  And as I read plaintiff's papers, they

2    concede that it is a two-year statute of limitations.

3            THE COURT:  Right.  You're just facing a tolling

4    argument.  That's not a --

5            MS. BARRAN:  Yes.

6            MS. NANAU:  Your Honor, I hate to interrupt already,

7    but I can barely hear Ms. Barran.  Could she maybe speak into a

8    microphone or something so that I can --

9            THE COURT:  You can go ahead and be seated.  That will

10   help.

11           MS. BARRAN:  Thank you, Your Honor.  It's just a

12   little uncomfortable sitting down in front of a judge during

13   argument.

14           Thank you.

15           THE COURT:  So we were just saying the parties seem to

16   agree that there's a two-year statute of limitations, and so

17   I've directed Ms. Barran to just pick up the tolling argument

18   made by plaintiff.

19           Go ahead.

20           MS. BARRAN:  So, Your Honor, the case law on equitable

21   tolling in this district and in this circuit is very clear.

22   First, it has to be an extreme case.  Plaintiff asserts that

23   everything that is necessary to identify a tolling issue is

24   already in the complaint, but remarkably asks for discovery to

25   see whether or not there is anything to support the tolling

1    argument.

2            So assuming that the statements in the complaint are

3    intended to assert the tolling facts, first, we have to find

4    something that is extraordinary that makes this an extreme case.

5    That's entirely missing from this -- from the allegations of

6    this case.

7            Second, plaintiff has to establish that he was

8    prevented by Reed, in our case, by the Reed Institute, from

9    asserting a timely claim.

10            Plaintiff argues that in the opposition citing the

11    Willamette Tree case, *EEOC v. Willamette Tree*, and the facts of

12    that case are so inapposite that it's surprising that it even

13    shows up in plaintiff's argument.  In *Willamette Tree*, the woman

14    who was an employee, who was a non-English speaker, had been

15    repeatedly raped by her supervisor, and was told that if she

16    told anybody about the rape he would kill her and kill her

17    family and kill her children.  If she quit her job, he would

18    find her and harm her.

19            Those are the kinds of things that certainly would

20    keep somebody from bringing a timely claim.  That's entirely

21    missing here.

22            In fact, if you look at the plaintiff's letter

23    arguments, he attaches to his complaint a letter that he wrote

24    to a group called CAT, which is the Committee on Advancement and

25    Tenure at Reed.  This was his 2015 complaint to Reed, or his

2015 letter to Reed, on the subject of whether or not Professor
Daby should get a contract renewal, and in it he says straight
out that you may wonder why I never brought this up before.  And
he gives two reasons; the first being that he was focused on his
unwavering loyalty to Professor Daby, and the second being he
was afraid of that jeopardizing his future academically.

That may have been a factor at some point during his
school years, but he had flunked out of Reed in January 2014 and
it took him close to four years to file this lawsuit.

So the focus for the Court is was there something that
Reed did that kept him from filing a timely lawsuit?  And he
doesn't assert anything.  He simply admits that he was loyal to
his former professor and that he didn't want to jeopardize his
academic career.  His academic career was over when he flunked
out of Reed.

He doesn't really say that he didn't file the lawsuit.
What he says is it took him until 2015 to write a letter to
Reed.  That's not the kind of conduct that this extraordinary
remedy or this extraordinary procedure of equitable tolling was
intended to cover.

The other cases that plaintiff cites in his memorandum
are similarly inapposite.  One of them, the *Alvarez* case, was a
gentleman who actually had been imprisoned and tortured in a
foreign country, obviously he was being held incommunicado, and
he couldn't file his lawsuit timely either.

1           Other cases that they cite are a collection of things

2      where the government gave the wrong advice to a plaintiff, was

3      late in getting the right to sue later, which was a prerequisite

4      to filing suit.  None of this is present here.

5           In fact, the plaintiff has not presented anything that

6      explains this extraordinary long period of time beyond the

7      running of the statute of limitations, almost two years after

8      the statute had expired.

9           The plaintiff also has to present evidence that it was

10     impossible for him to have filed his lawsuit on time, and that's

11     entirely missing as well.  He was able to write a letter to his

12     professors, he was able to ask for an opportunity to come back

13     to Reed, he was able to write a long letter to the Committee on

14     Advancement and Tenure, which you see attached to the complaint.

15     He could certainly have filed a lawsuit.

16          Similarly, another requirement for equitable tolling

17     is that he have -- he preceded with due diligence to preserve

18     his rights, and there's no evidence in the complaint or anywhere

19     that he did that.

20          He wrote his letter to the committee in October of

21     2015.  There's no indication of what was going on in the long

22     period of time from his flunking out of Reed to writing that

23     letter.  And then as you can see from the dates on that exhibit,

24     he waited a whole month before he even posted it to Reed, and

25     then he waited another two years before he wrote another letter.

1          So from that, you have to wonder why equitable tolling

2    has even been mentioned.

3          Plaintiff argues, then, that what the Court should do

4    is take the period between his two letters -- he wrote a letter

5    in October 2015 and then there was a contact -- I'm sorry.  The

6    letter and the contact.

7          So he wrote the one letter to the committee,

8    October 2015, and then the dean contacted him, June 2017, when

9    Professor Daby was standing for tenure, and plaintiff suggests

10   that you simply take that time out of the equation and treat

11   that as the tolling period.  There's no law cited for that

12   suggestion.

13         But even if you do the math, he still runs well

14   outside of the statute of limitations.  If you -- I actually

15   calculated the days this morning, and he's still a number of

16   days, like 86 days too late in filing the lawsuit, even if you

17   give him what he asks for which is to toll that period between

18   the two letters.

19         THE COURT:  All right.  Thank you.

20         Your response?

21         MS. NANAU:  Plaintiff's response, Your Honor, is that

22   Defendant Reed College is not giving due credence to the facts

23   alleged which do allege an extraordinary situation.

24         Mr. Choi went through four years of Reed College,

25   which were by and large successful until the last year.  And

1    then he encountered a series of problems, most of them having to

2    do with the failure of his thesis -- of his thesis advisor,

3    Defendant Szwarcberg Daby, to shepherd him through the thesis

4    process, and the reasons why that occurred are at issue in this

5    lawsuit.

6            THE COURT:  Those facts don't help me with the statute

7    of limitations argument.  Stick with what will help me decide

8    whether there was tolling here.

9            MS. NANAU:  Okay.  Well, then let me just focus on

10   this.

11           When Mr. Choi's first manuscript of his thesis, which

12   had been approved, was then immediately -- the approval was

13   revoked when he couldn't attend his oral examination because of

14   a medical emergency, he requested a series of accommodations

15   that were never -- that were never granted and, in fact, the

16   process of requesting the accommodations --

17           THE COURT:  Ms. Nanau, yet again you're telling me

18   things that don't help me at all on the tolling argument.

19           When do you believe the claim first accrued?

20           MS. NANAU:  I think the claim first accrued when Reed

21   College denied his requests for accommodation.

22           THE COURT:  All right.  And then what are you relying

23   on for tolling over the next ensuing more than four years?

24           MS. NANAU:  The plaintiff provided Reed College with

25   notice of both the failure of Defendant Szwarcberg Daby to

1    accommodate him, and of their very problematic personal

2    relationship that affected the thesis process in 2015.  He did

3    so at the behest of two professors, one of whom was chair of the

4    department at that time.  Because Reed College doesn't adhere to

5    its own policies or procedures, as this case will amply

6    demonstrate if we're allowed to move forward with discovery --

7              THE COURT:  Let me ask you this.  What's the dominant

8    fact you rely on that shows Reed College did something to

9    prevent the filing of this lawsuit?

10             MS. NANAU:  I think -- I think it's very difficult,

11   Your Honor, to slice and dice the evidence and give you an

12   answer unless I can draw your attention to the process at the

13   end of his tenure at Reed College.

14             When he tried to follow the procedures for requesting

15   accommodation, and every time he followed the college's own

16   directives from specific individuals, he was met with roadblocks

17   by other individuals in the college, namely professors who

18   didn't follow those procedures.  And so when two professors came

19   to him and suggested that this entire situation could be

20   remedied if he explicitly told the committee on tenure what was

21   going on, then he followed that directive because he believed

22   this was the only opportunity for him to provide the college

23   with all of the information that it required so that his

24   situation with the college, vis-à-vis his degree, could be

25   reconsidered.

1           He followed their directives.  They waited two years

2   to get back to him, and so equitable tolling is appropriate here

3   because of that.

4           And there's no -- there's no prejudice to Reed College

5   because they've had notice of this, this complaint, within the

6   statutory time -- within statutory time period, and they waited

7   until the statute of limitations ran out before they

8   acknowledged this complaint and asked for more information.

9   These are extraordinary circumstances, Your Honor.

10          THE COURT:  Thank you very much, Ms. Nanau.  I

11  disagree.  I don't find extraordinary circumstances.  I don't

12  find anything in the facts of this case that remotely satisfies

13  the requirements for tolling.

14          I dismiss claims 1 and 2 with prejudice for -- based

15  on the fact that the statute of limitations has expired.

16          Let's pick up claim 3 on breach of contract, and that

17  meaning the breach of contract claim against Reed.

18          I'll again turn to the moving party.

19          MS. BARRAN:  Thank you, Your Honor.

20          The contract claim statute of limitations is of course

21  longer; it's a six-year statute in Oregon.  This is basically a

22  failure to state a claim and failure to plead appropriately.

23          On the contract claim, there are several elements that

24  need to show up in the pleading, the first of -- one of -- the

25  first of which is an identification of what contract was

1    breached.  And in this pleading, plaintiff provides a laundry

2    list of basically all school policies and procedures, asserts

3    that they're contractual, and then says that they were breached

4    in some sort of global way.  There's no real identification of

5    which policy the plaintiff is talking about.

6         And secondarily, also missing from that complaint is

7    any indication from the plaintiff that he complied with his side

8    of the bargain.

9         So assuming that these policies are contractual, the

10   question is did he properly plead a contract claim?  And our

11   request is that the Court dismiss the contract claim because he

12   did not.

13        We know specifically, taking the second one first,

14   that he has not met his end of the bargain because he failed his

15   thesis, he failed to produce a document that was appropriate.

16   His academic problems were not caused by Reed.  He admits in his

17   papers that he lost his thesis document because of his own

18   negligence and carelessness.

19        He was given an opportunity to provide a substandard

20   draft and defend it.  He didn't show up for his defense.  He was

21   given a further extension of approximately one month, and he

22   failed to turn in that document on time.

23        THE COURT:  You don't have to show his own breach.

24   You're just saying that the pleadings in the case don't allege

25   his own full performance and his own lack of breach; right?

1          MS. BARRAN:  Correct.

2          THE COURT:  That's the principal pleading failure

3    you're relying on here today?

4          MS. BARRAN:  That, plus the failure to identify just

5    what policy requirements that are alleged to have been breached.

6    For example --

7          THE COURT:  He identified policies.  You're saying he

8    just didn't identify which policy within the broad policy, which

9    sub-policy is in play?

10         MS. BARRAN:  Correct.  Reed has many, many policies,

11   and they're all listed, but there isn't an indication of what

12   was breached.  And I'll give you an example, Your Honor, that I

13   think illustrates this.

14         There is a complaint that you see mentioned two or

15   three times in the course of the pleading that says the sign-off

16   of his thesis document from December 2013 was revoked with

17   his -- without his ever having been given a reason for revoking

18   it contrary to the policies.  I am clueless about what policies

19   require Reed to give a student some sort of information, the

20   reason for revoking a sign-off on a thesis that everybody agrees

21   was substandard.  So I don't know what these policies are.

22         THE COURT:  All right.  Thank you.

23         And your response on breach of contract?

24         MS. NANAU:  Your Honor, this is a motion to dismiss

25   and the standard is whether there are sufficient facts that have

1  been pled to make out a cognizable legal claim.

2          The plaintiff has alleged several specific college

3  policies that were breached; among them, the college's policy

4  that forbids plagiarism, the college policy that prohibits

5  sexual relations between professors and students, and college

6  policies regarding the thesis process.  There is nothing in

7  those policies that permitted Reed to revoke the thesis approval

8  and require Andrew to submit a second manuscript.  There is

9  nothing in those policies that permitted Reed to ignore his

10  complaint.

11          And the written complaint in 2015 was not the first

12  complaint that he made about Professor Szwarcberg Daby and her

13  inappropriate treatment of him.

14          THE COURT:  Let's turn to the other argument, then,

15  the failure of plaintiff to plead his own full performance in

16  lack of breach.  Do you have that in the complaint now?

17          MS. NANAU:  Yes, it is in the complaint, Your Honor.

18  And if you permit me a moment, I can read you the specific

19  paragraphs in the complaint -- I was just looking over it -- but

20  it's going to take a moment for me to get there.

21          THE COURT:  Go ahead.

22          MS. NANAU:  Sorry, Your Honor.  I'm a little nervous

23  and I'm not finding it.

24          The gist of what we said is that there were all of

25  these policies that bound Reed but also bound Andrew.

1          THE COURT:  What were the obligations your client

2    undertook as part of this contract?  What did the contract

3    obligate your client to do?

4          MS. NANAU:  To satisfactorily complete his course of

5    study, to abide by the rules that were promulgated by the

6    college that pertained to students, and he fulfilled all of

7    those obligations to graduate but for the breaches that are at

8    issue in this case that -- that were -- sorry -- that

9    were -- the breaches of policies that Reed engaged in and

10   Professor Daby.

11         THE COURT:  But you're unable to tell me where in the

12   contract this is alleged; in other words, here are the

13   obligations I undertook and I did them all?

14         MS. NANAU:  Your Honor, there is language in the

15   pleading that states what Choi's obligations were to the college

16   pursuant to its own policies.  And there is an allegation in the

17   pleading, but I'm sorry, I cannot find right this second, that

18   says he alleges that he complied with all of those obligations.

19         THE COURT:  All right.  Thank you very much.

20         Do you wish to reply, Ms. Barran?

21         MS. BARRAN:  Just a few things, Your Honor.

22         Specifically in the complaint, plaintiff concedes that

23   he failed his thesis.  But even setting the thesis aside, you

24   see allegations in the complaint that he failed to complete a

25   senior level political science course for Professor Gronke.

1          THE COURT:  How do I know that's a term of the

2    contract incumbent on plaintiff that he failed to perform?

3          MS. BARRAN:  Because the plaintiff says that he had

4    academic responsibilities and that they were part of his

5    completion of the coursework, and that's what Ms. Nanau just

6    argued.  So we know that he didn't turn in his thesis, we know

7    that the thesis was required, we know that he failed to turn in

8    an examination, and he failed to turn in his political science

9    homework.

10          We also know from his letter to the two professors

11    that he -- and he confesses that he responded to their

12    assistance with dishonesty and a failure to be truthful with

13    them.

14          THE COURT:  All right.  Thank you.

15          I dismiss the breach of contract claim without

16    prejudice.  Here's what I think is missing, and plaintiff has

17    two weeks to amend.

18          First, the amended pleading should set forth with

19    specificity what the terms are of the contract that impose any

20    obligation on plaintiff.  That's the nature of a contract, of

21    course, that they have mutual obligations.  So we should be able

22    to tell readily from the complaint what the terms are in the

23    contract that imposed some obligation of performance on

24    plaintiff.

25          And then assuming he can do so, the contract has to

1  allege that -- he has to plead his own full performance and lack

2  of breach.

3          That's the first thing that has to be amended.  And

4  it's not -- it may be discernable in some rough way by parsing

5  the pleadings now, although I don't think so, but it's not the

6  least bit clear that that's the case.

7          Second, the plaintiff needs to identify when he

8  alleges a breach by Reed, what provision of the contract is

9  being breached.  That's because the plaintiff has alleged a

10 far-flung set of documents as the contract, and it's -- while

11 it's not necessary to be line by line specific, one should be

12 able to read the complaint and tell what term of the contract is

13 being breached when one alleges a breach by Reed.

14         So if, for example, withdrawing approval is a breach

15 of the contract, then somewhere nearby when that breach is

16 alleged one should be able to tell what provision of the

17 contract is being breached.

18         So I dismiss claim 3 without prejudice to amend in two

19 weeks' time.

20         Claim 4 is negligent retention and supervision.

21 Again, I'll turn to the moving party.

22         MS. BARRAN:  That's also a claim by Reed and it is a

23 claim against Reed.

24         There are two potential aspects to this, and I think

25 it's a little unclear in the complaint just how plaintiff

1    intended to structure this.

2          If plaintiff intends to say that there was negligence

3    in Reed up until the time that he failed and left the school in

4    January 24 [sic], then the timeliness arguments that we made

5    with respect to the first two claims apply here just as well.

6          As I understand the plaintiff's arguments, the

7    negligence claim is that, in 2015, the plaintiff sent a letter

8    to Reed complaining about those older events -- and the dean was

9    carbon copied on it, it wasn't directed to him -- and that the

10   dean was either not trained, with no detail, or unfairly or

11   improperly supervised with no detail and did nothing about the

12   letter, and, therefore, the plaintiff can't argue about what

13   happened to him at Reed up until 2014 by sending a letter in

14   2015 that wasn't acted on.

15         So assuming that that -- that I have the theory

16   correct, the events up until the time the plaintiff left Reed

17   are clearly untimely.  It's a two-year statute of limitations.

18         If this is intended to be a claim for negligent

19   retention or negligent supervision, it's a state law claim with

20   very specific requirements.  The plaintiff has to identify

21   foreseeable risk of harm, that he's part of the persons intended

22   to be protected by that.  He has to show that there were known

23   dangerous propensities by the employee -- in this case, the

24   dean -- that they were foreseeable and that he could foreseeably

25   have harmed the plaintiff and the plaintiff was injured because

1    of that.  None of that is present in this.

2              THE COURT:  Can you pull the microphone closer to you.

3              MS. BARRAN:  None of that is present in this

4    complaint, Your Honor.  They say nothing about the dean other

5    than his name, he was carbon-copied on a letter, and then this

6    negligence claim flows.

7              What really is apparent here is an attempt to dress up

8    the old claim to see if they can escape the statute of

9    limitations, and for those reasons we would move to dismiss this

10   claim.

11             THE COURT:  Are you making any argument about special

12   relationship, or not?

13             MS. BARRAN:  We have cited cases about the lack of a

14   special relationship.  So we are, Your Honor.  There isn't any

15   recognition in this court as we sit here today that there's a

16   special relationship between this -- between this student and

17   between Reed College.

18             In this particular case, there clearly wouldn't be

19   one, even leaving aside whether or not the Court would recognize

20   one when he was a student.  Remember that this letter was

21   written in 2015, at the end of 2015, October, written in

22   October, sent in November 2015.  He had not been a student at

23   Reed since January 2014.  So he was a person who was a former

24   student for Reed.

25             Under those circumstances, if this Court hasn't

1    clearly recognized a special relationship between a present

2    student and the institution, it certainly, we submit, would not

3    recognize a special relationship between a former student and

4    that institution.

5          So we would --

6          THE COURT:  All right.  Thank you.

7          For plaintiff, if you'd first identify whether this

8    claim is sort of a straight negligence claim for events that

9    occurred during the time your client was a student, or,

10   alternatively, a negligent retention claim for negligent

11   retention and training of a dean in the time period after your

12   client was no longer at Reed.  Can you tell us which it is.

13         MS. NANAU:  Sure, Your Honor.  It's the latter.  All

14   of -- because this -- all of the events regarding Nigel

15   Nicholson, who is the dean, and also the head of the committee

16   on tenure and advancement at Reed, because he's the dean of the

17   faculty, all of -- the claim is rooted in conduct that happened

18   after Andrew was no longer matriculated as a student but still

19   discussing a possible return to Reed.  That's why he was still

20   in connection with various professors who encouraged him to

21   submit the complaint to the CAT.

22         THE COURT:  So let's talk about just one element of

23   what you'd have to plead for that sort of negligent retention

24   claim, and that's the idea that since you're seeking only

25   economic damages, not physical harm, that you'd have to plead a

1   special relationship between a former student and Reed College.

2   Can you do that?  Did you do that?  Is that even possible?

3           MS. NANAU:  Well, Your Honor, I think the special

4   relationship is a really fact-intensive inquiry, and I think

5   here we could do it.

6           I think I've alleged sufficient facts that are very

7   similar to the case of -- the *Shin* case, which involved a

8   student in a prep school.  That student was 17 years old, living

9   at a boarding school, and the court found that there was a

10  proper relationship between that school and the student.

11          Similarly, the relationship that Andrew has with Reed

12  is informed by the special relationship that he had with them as

13  a result of him being a student there as a very young person.

14          THE COURT:  Thank you.

15          MS. NANAU:  And if he -- if I could just add one

16  thing, Your Honor.

17          He was complaining about something that required a

18  response and there was no response for two years, and that's the

19  root of the negligence claim here.

20          THE COURT:  Thank you.

21          I don't get to make Oregon contract law.  It has

22  requirements in it, and one of them here is, because of the

23  nature of the damages sought, that there be a special

24  relationship in this -- between the parties here.

25          Of course there are a number of relationships that are

1   accepted as special in case law or are obvious like

2   attorney-client or doctor-patient.  Among the possible special

3   relationships, it's a little murky, and as counsel has

4   suggested, it can be very fact-specific with regard to whether

5   there's a school-student special relationship.

6           And I think that's certainly possible in the setting

7   of an elementary or secondary school.  There are many elements

8   to that including, although it's not talked about this way as

9   much, as sort of an in loco parentis idea, but also just the age

10  and sort of shared child custody between parents and schools.

11          I think it, in my view, doubtful that one can

12  successfully advance a special relationship theory between

13  college students and their college or university since a lot has

14  changed by then, including age, but also including their

15  relationship to the age of majority and their parents and

16  otherwise.

17          Even, however, if there were a special relationship

18  between a college and a student, such as the college and the

19  student in this case, or the dean and the student here, that

20  wouldn't survive the end of the student-college or student-dean

21  relationship.  It wouldn't apply to a former or ex-student.

22          And it doesn't really matter that he or she might be

23  contemplating returning.  You can be in a special relationship

24  and then out of one and then get back in one as, for example,

25  when you have a lawyer and then you don't, and then you hire a

1  lawyer.  But that doesn't endure for the interregnum.  And so

2  that's missing here.

3       There are other things that are missing that are

4  pleading problems, but this isn't a pleading problem and this

5  one is insuperable, and, therefore, I dismiss this contract

6  claim -- excuse me -- this negligent retention claim with

7  prejudice.

8       I'll turn to the motion for summary judgment.  We'll

9  turn to claim 5, the breach of contract alleged in that claim.

10 Start with the moving party.

11       MS. RUNKLES-PEARSON:  Good afternoon, Your Honor.

12       The breach of contract here needs to fail.  It's

13 fairly obvious from the pleading and from the briefing back and

14 forth that the contract that the plaintiff is alleging is

15 contained in an offer letter offering a stipend over the summer

16 called -- the so-called Corbett grant from Reed College to both

17 Professor Szwarcberg Daby on the one hand and the plaintiff on

18 the other hand.

19       These are two separate letters.  I think there is a

20 question as to whether there's a contract at all, but the Court

21 doesn't need to decide that in order to decide this motion.

22       The plaintiff alleges that the breach of contract is

23 that Professor Szwarcberg Daby failed to provide attribution to

24 the plaintiff in three different works; one is her book, another

25 is a presentation that she made to the American Political

1    Science Association, and the third is in a book review that she

2    wrote of another professor's work that was published in an

3    academic journal.

4         The key issue here, Your Honor, is that there is

5    nothing in the contract, if indeed it is a contract, that

6    requires attribution by Professor Szwarcberg Daby.  The contract

7    doesn't include any term requiring acknowledgment whatsoever,

8    and there's no term in it that might be ambiguous such that it

9    would allow extrinsic evidence that the plaintiff is seeking to

10   rely on in support of the response.

11        THE COURT:  So your argument is that while the

12   extrinsic evidence might point to an idea that attribution is

13   something Reed College favors, that I should not turn to it

14   unless there's ambiguity in the terms of the contract itself,

15   and you contend there is no such ambiguity.

16        MS. RUNKLES-PEARSON:  That's correct, Your Honor.

17        I have further evidence which has actually not yet

18   been presented to the Court that I would like to present to the

19   Court at this point if the Court would find it helpful.

20        Since the briefing closed on this case, we had the

21   opportunity to take plaintiff's deposition, and his deposition

22   testimony further supports our arguments in this matter.

23        THE COURT:  I wouldn't do that if I thought the terms

24   were ambiguous; right?

25        MS. RUNKLES-PEARSON:  Correct, Your Honor.  However,

1  his deposition testimony does point out that he agrees that this

2  is the contract, and he further acknowledges that there is no

3  term in the contract that requires attribution.

4       THE COURT:  The Corbett grant contract as alleged

5  appears to me to be between Reed and the grantees; right?

6       MS. RUNKLES-PEARSON:  I think that that's a flaw in

7  the plaintiff's claim that we haven't addressed in this motion,

8  Your Honor.  The letter itself is a letter from Reed -- two

9  letters.  There's one from Reed to the plaintiff, and then there

10  is one from Reed to Professor Szwarcberg Daby.  We think that

11  there is some oddness there that, should the Court allow this

12  claim to go forward, we would address in a future fuller motion.

13       However, that's not the basis of this motion.  The

14  basis of this motion is that if there is a contract, it contains

15  no term requiring attribution.

16       THE COURT:  Thank you.

17       For plaintiff?

18       MS. NANAU:  Your Honor, the Corbett grant was for

19  collaborative work to be performed by Szwarcberg Daby and Choi.

20  There was no requirement for attribution because it was expected

21  because the work was collaborative in nature.

22       To accept defendant's arguments is to ignore the

23  purpose of the grant in and of itself and to ignore the plain

24  meaning of the word "collaborative" which means they did it

25  together.

 1          THE COURT:  Your argument is that "collaborative"

 2    necessarily includes the concept of attribution?

 3          MS. NANAU:  Yes, Your Honor.  Because if you're a

 4    co-author and you're collaborating on a scholarly work, you are

 5    entitled to attribution for your contributions to that work as a

 6    co-author.  And that is -- and that is enforced by the policies

 7    of Reed College which should be informing the Court's view of

 8    this because the policies are essentially like course of

 9    dealing, and course of dealing is always taken into account when

10    terms of the contract are ambiguous, as they are here.

11          THE COURT:  And the word you find ambiguous is

12    "collaborative"?

13          MS. NANAU:  Well, no.  I think "collaborative" -- the

14    fact that this was a collaborative research project informs the

15    parameters of the contract as it existed and what the

16    obligations were.  The ambiguity is in that there is a reference

17    to attribution, but the reference to attribution is only limited

18    to Reed College in the contract.

19          So it's not actually correct that there is no

20    requirement for attribution.  It only requires that the

21    attribution go to Reed College for providing funds pursuant to

22    the Corbett grant, which Defendant Szwarcberg Daby didn't do

23    either.

24          THE COURT:  All right.  Thank you.

25          Ms. Runkles-Pearson, your argument depends on the idea

1    that "collaborative" cannot be read to mean to include

2    attribution; right?

3            MS. RUNKLES-PEARSON:  I think that's correct,

4    Your Honor.  I think it needs to be read in the context of the

5    rest of the provisions of the contract, which, as counsel

6    pointed out, does include a statement specifically stating we

7    would appreciate any papers or publications resulting from this

8    work to include the foregoing or the following acknowledgement.

9    This research was supported by a Reed College collaborative

10   research grant.

11           I don't think that there's anything about the word

12   "collaborative" that requires attribution.  I don't think that's

13   an ambiguous term.  Furthermore, we have the plaintiff's own

14   testimony here that there's nothing in this --

15           THE COURT:  Why would I rely on that unless I find the

16   word to be ambiguous?

17           MS. RUNKLES-PEARSON:  That is true, Your Honor.

18   That's a backup argument, I suppose.

19           But I don't believe that the word "collaborative" is

20   ambiguous in any way.  It certainly, at its farthest reaches,

21   implies that people work together; however, it does not imply in

22   any way that attribution must be provided.

23           Furthermore, even if the term were found to be

24   ambiguous, the surrounding information that we have here makes

25   it fairly obvious what plaintiff and Professor Szwarcberg Daby

1    anticipated.  We've --

2              THE COURT:  Surrounding information, you mean the

3    textual information in the grant?  Or the deposition testimony?

4              MS. RUNKLES-PEARSON:  I think both make that clear,

5    Your Honor.  I think you can look solely at the language of this

6    contract and find that --

7              THE COURT:  I'd look at the language in the contract,

8    the other language in the contract, as phase 1 to decide if it's

9    ambiguous.  It's not a later phase.  I don't just look at the

10   word "ambiguous," I look at the entire contract.  That's phase 1

11   of contract analysis; right?

12             MS. RUNKLES-PEARSON:  That's correct, Your Honor.  And

13   I think as an initial matter, from the face of this contract

14   alone, you can conclude that there's no term requiring

15   attribution.

16             THE COURT:  Thank you very much.  I agree that the

17   term at least as employed in this particular contract is not

18   ambiguous and does not contain within it a requirement for

19   attribution.  That's a separate concept that would have to have

20   been dealt with separately and isn't picked up by the concept of

21   collaborative work.  And I find that just by the nature of the

22   term itself, but also by the term read in context of -- in

23   context of the entire contract, and therefore I grant summary

24   judgment as to claim 5 on the breach of contract for -- under my

25   reading of the actual terms of the contract itself.

1          Claim 6 is as to conversion, and Mr. Choi has conceded

2    that his conversion claim fails because an Oregon conversion

3    claim cannot apply to theft of intellectual property and in any

4    event would be preempted by copyright or patent law.  So I

5    dismiss claim 6 with prejudice.

6          In all of this, I've left one claim subject to

7    amendment.  I don't find any other amendment to be anything

8    other than futile here.

9          Mr. Choi wants to amend to state a claim under the ADA

10   and not Title 11 for disability discrimination, but that would

11   have the same statute of limitation and equitable tolling issue,

12   and wants to amend for declaratory relief against Ms. Szwarcberg

13   Daby in a variety of ways that aren't really what is intended by

14   the concept of declaratory relief.  Instead, they are just

15   concepts picked up by my other rulings already on the pleadings

16   in this case.

17         So in two weeks we'll get an amendment on one of the

18   claims, and that's the only claim that has a possibility of

19   going forward, depending on how the amendment goes.

20         Thank you all.  We'll be in recess.

21

22         (The proceedings concluded at 2:42 p.m.)

23

24

25

1                    C E R T I F I C A T E

2

3          I certify, by signing below, that the foregoing is a

4  true and correct transcript of the record, taken by stenographic

5  means, of the proceedings in the above-titled cause.   A

6  transcript without an original signature, conformed signature,

7  or digitally signed signature is not certified.

8

9          DATED this 27th day of July, 2018.

10

11

12                              _____

13                              RYAN WHITE
                                Registered Merit Reporter
                                Certified Realtime Reporter
14                              Expires 9/30/2019
                                Washington CCR No. 3220
15                              Expires 10/25/2018
                                Oregon CSR No. 10-0419
16                              Expires 12/31/2020

17

18

19

20

21

22

23

24

25

**1**

**1** [4] - 3:18, 11:14, 28:8, 28:10
**10-0419** [1] - 30:15
**10/25/2018** [1] - 30:15
**1000** [1] - 1:24
**11** [2] - 3:18, 29:10
**111** [1] - 2:15
**11385** [1] - 2:5
**12/31/2020** [1] - 30:16
**1205** [1] - 2:8
**17** [1] - 21:8

**2**

**2** [2] - 3:18, 11:14
**20** [2] - 1:7, 3:1
**2013** [1] - 13:16
**2014** [3] - 6:8, 18:13, 19:23
**2015** [13] - 5:25, 6:1, 6:17, 7:21, 8:5, 8:8, 10:2, 14:11, 18:7, 18:14, 19:21, 19:22
**2017** [1] - 8:8
**2018** [3] - 1:7, 3:1, 30:9
**205-2314** [1] - 2:16
**228-0500** [1] - 2:12
**2300** [1] - 2:11
**24** [1] - 18:4
**25th** [1] - 2:8
**27th** [1] - 30:9
**2:00** [1] - 3:1
**2:42** [1] - 29:22
**2nd** [1] - 2:11

**3**

**3** [2] - 11:16, 17:18
**301** [1] - 1:24
**3220** [1] - 30:14
**326-8184** [1] - 1:25
**3400** [1] - 2:15
**3:17-cv-02064-MO** [1] - 1:6
**3:17-cv-2064-MO** [1] - 3:6
**3rd** [1] - 1:24

**4**

**4** [1] - 17:20
**404-4975** [1] - 2:5

**5**

**5** [2] - 23:9, 28:24
**503** [4] - 1:25, 2:9, 2:12, 2:16
**5th** [1] - 2:15

**6**

**6** [2] - 29:1, 29:5

**601** [1] - 2:11

**8**

**86** [1] - 8:16
**888** [1] - 2:5
**89-03** [1] - 2:4

**9**

**9/30/2019** [1] - 30:14
**922-2243** [1] - 2:9
**97204** [3] - 1:24, 2:12, 2:15
**97210** [1] - 2:8

**A**

**abide** [1] - 15:5
**able** [6] - 7:11, 7:12, 7:13, 16:21, 17:12, 17:16
**above-titled** [1] - 30:5
**academic** [5] - 6:14, 12:16, 16:4, 24:3
**academically** [1] - 6:6
**accept** [1] - 25:22
**accepted** [1] - 22:1
**accommodate** [1] - 10:1
**accommodation** [2] - 9:21, 10:15
**accommodations** [2] - 9:14, 9:16
**account** [1] - 26:9
**accrued** [2] - 9:19, 9:20
**acknowledged** [1] - 11:8
**acknowledgement** [1] - 27:8
**acknowledges** [1] - 25:2
**acknowledgment** [1] - 24:7
**acted** [1] - 18:14
**actual** [1] - 28:25
**ADA** [1] - 29:9
**add** [1] - 21:15
**address** [1] - 25:12
**addressed** [1] - 25:7
**adhere** [1] - 10:4
**admits** [2] - 6:12, 12:16
**advance** [1] - 22:12
**advancement** [1] - 20:16
**Advancement** [2] - 5:24, 7:14
**advice** [1] - 7:2
**advisor** [1] - 9:2
**affected** [1] - 10:2
**afraid** [1] - 6:6
**afternoon** [1] - 23:11

**age** [3] - 22:9, 22:14, 22:15
**agree** [2] - 4:16, 28:16
**agrees** [2] - 13:20, 25:1
**ahead** [3] - 4:9, 4:19, 14:21
**al** [1] - 3:6
**allegation** [1] - 15:16
**allegations** [2] - 5:5, 15:24
**allege** [3] - 8:23, 12:24, 17:1
**alleged** [9] - 8:23, 13:5, 14:2, 15:12, 17:9, 17:16, 21:6, 23:9, 25:4
**alleges** [4] - 15:18, 17:8, 17:13, 23:22
**alleging** [1] - 23:14
**allow** [2] - 24:9, 25:11
**allowed** [1] - 10:6
**almost** [1] - 7:7
**alone** [1] - 28:14
**alternatively** [1] - 20:10
**Alvarez** [1] - 6:22
**ambiguity** [3] - 24:14, 24:15, 26:16
**ambiguous** [11] - 24:8, 24:24, 26:10, 26:11, 27:13, 27:16, 27:20, 27:24, 28:9, 28:10, 28:18
**amend** [4] - 16:17, 17:18, 29:9, 29:12
**amended** [2] - 16:18, 17:3
**amendment** [4] - 29:7, 29:17, 29:19
**American** [1] - 23:25
**amply** [1] - 10:5
**analysis** [1] - 28:11
**Andrew** [6] - 3:9, 3:11, 14:8, 14:25, 20:18, 21:11
**ANDREW** [1] - 1:5
**answer** [1] - 10:12
**anticipated** [1] - 28:1
**apparent** [1] - 19:7
**APPEARANCES** [1] - 2:1
**apply** [3] - 18:5, 22:21, 29:3
**appreciate** [1] - 27:7
**appropriate** [2] - 11:2, 12:15
**appropriately** [1] - 11:22
**approval** [3] - 9:12, 14:7, 17:14
**approved** [1] - 9:12
**argue** [1] - 18:12

**argued** [1] - 16:6
**argues** [2] - 5:10, 8:3
**argument** [15] - 3:5, 3:25, 4:4, 4:13, 4:17, 5:1, 5:13, 9:7, 9:18, 14:14, 19:11, 24:11, 26:1, 26:25, 27:18
**Argument** [1] - 1:15
**arguments** [5] - 5:23, 18:4, 18:6, 24:22, 25:22
**aside** [2] - 15:23, 19:19
**aspects** [1] - 17:24
**assert** [2] - 5:3, 6:12
**asserting** [1] - 5:9
**asserts** [4] - 4:22, 12:2
**assistance** [1] - 16:12
**Association** [1] - 24:1
**assuming** [4] - 5:2, 12:9, 16:25, 18:15
**attached** [1] - 7:14
**attaches** [1] - 5:23
**attempt** [1] - 19:7
**attend** [1] - 9:13
**attention** [1] - 10:12
**attorney** [1] - 22:2
**attorney-client** [1] - 22:2
**attribution** [17] - 23:23, 24:6, 24:12, 25:3, 25:15, 25:20, 26:2, 26:5, 26:17, 26:20, 26:21, 27:2, 27:12, 27:22, 28:15, 28:19
**author** [2] - 26:4, 26:6
**Avenue** [5] - 1:24, 2:4, 2:8, 2:11, 2:15

**B**

**backup** [1] - 27:18
**barely** [1] - 4:7
**bargain** [2] - 12:8, 12:14
**Barran** [3] - 3:14, 4:7, 4:17, 15:20
**BARRAN** [16] - 2:10, 2:10, 3:14, 3:21, 4:5, 4:11, 4:20, 11:19, 13:1, 13:4, 13:10, 15:21, 16:3, 17:22, 19:3, 19:13
**based** [1] - 11:14
**basis** [2] - 25:13, 25:14
**BEFORE** [1] - 1:17
**behalf** [3] - 3:10, 3:12, 3:14
**behest** [1] - 10:3
**below** [1] - 9:24
**between** [15] - 8:4, 8:17, 14:5, 19:16,

19:17, 20:1, 20:3, 21:1, 21:10, 21:24, 22:10, 22:12, 22:18, 25:5
**beyond** [1] - 7:6
**bit** [1] - 17:6
**boarding** [1] - 21:9
**book** [2] - 23:24, 24:1
**bound** [1] - 14:25
**Brague** [1] - 3:10
**BRAGUE** [3] - 2:6, 2:7, 3:10
**breach** [16] - 11:16, 11:17, 12:23, 12:25, 13:23, 14:16, 16:15, 17:2, 17:8, 17:13, 17:14, 17:15, 23:9, 23:12, 23:22, 28:24
**breached** [8] - 12:1, 12:3, 13:5, 13:12, 14:3, 17:9, 17:13, 17:17
**breaches** [2] - 15:7, 15:9
**briefing** [2] - 23:13, 24:20
**bringing** [1] - 5:20
**broad** [1] - 13:8
**brought** [1] - 6:3
**business** [1] - 1:8

**C**

**calculated** [1] - 8:15
**cannot** [3] - 15:17, 27:1, 29:3
**carbon** [2] - 18:9, 19:5
**carbon-copied** [1] - 19:5
**career** [2] - 6:14
**carelessness** [1] - 12:18
**case** [23] - 3:6, 4:1, 4:20, 4:22, 5:4, 5:6, 5:8, 5:11, 5:12, 6:22, 10:5, 11:12, 12:24, 15:8, 17:6, 18:23, 19:18, 21:7, 22:1, 22:19, 24:20, 29:16
**cases** [3] - 6:21, 7:1, 19:13
**CAT** [2] - 5:24, 20:21
**caused** [1] - 12:16
**CCR** [1] - 30:14
**certainly** [5] - 5:19, 7:15, 20:2, 22:6, 27:20
**certified** [1] - 30:7
**Certified** [1] - 30:13
**certify** [1] - 30:3
**chair** [1] - 10:3
**changed** [1] - 22:14
**child** [1] - 22:10
**children** [1] - 5:17

2

**CHOI** [1] - 1:5
**Choi** [7] - 3:6, 3:9, 3:11, 8:24, 25:19, 29:1, 29:9
**Choi's** [2] - 9:11, 15:15
**circuit** [1] - 4:21
**circumstances** [3] - 11:9, 11:11, 19:25
**cite** [1] - 7:1
**cited** [2] - 8:11, 19:13
**cites** [1] - 6:21
**citing** [1] - 5:10
**claim** [44] - 3:18, 5:9, 5:20, 9:19, 9:20, 11:16, 11:17, 11:20, 11:22, 11:23, 12:10, 12:11, 14:1, 16:15, 17:18, 17:20, 17:22, 17:23, 18:7, 18:18, 18:19, 19:6, 19:8, 19:10, 20:8, 20:10, 20:17, 20:24, 21:19, 23:6, 23:9, 25:7, 25:12, 28:24, 29:1, 29:2, 29:3, 29:5, 29:6, 29:9, 29:18
**claims** [3] - 11:14, 18:5, 29:18
**clear** [4] - 4:1, 4:21, 17:6, 28:4
**clearly** [3] - 18:17, 19:18, 20:11
**CLERK** [1] - 3:5
**client** [5] - 15:1, 15:3, 20:9, 20:12, 22:2
**close** [1] - 6:9
**closed** [1] - 24:20
**closer** [1] - 19:2
**clueless** [1] - 13:18
**co** [2] - 26:4, 26:6
**co-author** [2] - 26:4, 26:6
**cognizable** [1] - 14:1
**collaborating** [1] - 26:4
**collaborative** [12] - 25:19, 25:21, 25:24, 26:1, 26:12, 26:13, 26:14, 27:1, 27:9, 27:12, 27:19, 28:21
**collection** [1] - 7:1
**college** [13] - 10:17, 10:22, 10:24, 14:2, 14:4, 14:5, 15:6, 15:15, 22:13, 22:18, 22:20
**College** [16] - 8:22, 8:24, 9:21, 9:24, 10:4, 10:8, 10:13, 11:4, 19:17, 21:1, 23:16, 24:13, 26:7, 26:18, 26:21, 27:9

**COLLEGE** [1] - 1:8
**college's** [2] - 10:15, 14:3
**Committee** [2] - 5:24, 7:13
**committee** [4] - 7:20, 8:7, 10:20, 20:15
**complaining** [2] - 18:8, 21:17
**complaint** [24] - 3:23, 4:24, 5:2, 5:23, 5:25, 7:14, 7:18, 11:5, 11:8, 12:6, 13:14, 14:10, 14:11, 14:12, 14:16, 14:17, 14:19, 15:22, 15:24, 16:22, 17:12, 17:25, 19:4, 20:21
**complete** [2] - 15:4, 15:24
**completion** [1] - 16:5
**complied** [2] - 12:7, 15:18
**concede** [1] - 4:2
**conceded** [1] - 29:1
**concedes** [1] - 15:22
**concept** [4] - 26:2, 28:19, 28:20, 29:14
**concepts** [1] - 29:15
**conclude** [1] - 28:14
**concluded** [1] - 29:22
**conduct** [2] - 6:18, 20:17
**confesses** [1] - 16:11
**conformed** [1] - 30:6
**connection** [1] - 20:20
**contact** [2] - 8:5, 8:6
**contacted** [1] - 8:8
**contain** [1] - 28:18
**contained** [1] - 23:15
**contains** [1] - 25:14
**contemplating** [1] - 22:23
**contend** [1] - 24:15
**context** [3] - 27:4, 28:22, 28:23
**contract** [52] - 6:2, 11:16, 11:17, 11:20, 11:23, 11:25, 12:10, 12:11, 13:23, 15:2, 15:12, 16:2, 16:15, 16:19, 16:20, 16:23, 16:25, 17:8, 17:10, 17:12, 17:15, 17:17, 21:21, 23:5, 23:9, 23:12, 23:14, 23:20, 23:22, 24:5, 24:6, 24:14, 25:2, 25:3, 25:4, 25:14, 26:10, 26:15, 26:18, 27:5, 28:6, 28:7, 28:8, 28:10, 28:11, 28:13, 28:17, 28:23, 28:24,

28:25
**contractual** [2] - 12:3, 12:9
**contrary** [1] - 13:18
**contributions** [1] - 26:5
**conversion** [3] - 29:1, 29:2
**copied** [2] - 18:9, 19:5
**copyright** [1] - 29:4
**Corbett** [4] - 23:16, 25:4, 25:18, 26:22
**correct** [9] - 13:1, 13:10, 18:16, 24:16, 24:25, 26:19, 27:3, 28:12, 30:4
**counsel** [3] - 3:7, 22:3, 27:5
**country** [1] - 6:24
**course** [8] - 11:20, 13:15, 15:4, 15:25, 16:21, 21:25, 26:8, 26:9
**coursework** [1] - 16:5
**court** [2] - 19:15, 21:9
**COURT** [40] - 1:1, 1:18, 3:16, 4:3, 4:9, 4:15, 8:19, 9:6, 9:17, 9:22, 10:7, 11:10, 12:23, 13:2, 13:7, 13:22, 14:14, 14:21, 15:1, 15:11, 15:19, 16:1, 16:14, 19:2, 19:11, 20:6, 20:22, 21:14, 21:20, 24:11, 24:23, 25:4, 25:16, 26:1, 26:11, 26:24, 27:15, 28:2, 28:7, 28:16
**Court** [11] - 1:23, 6:10, 8:3, 12:11, 19:19, 19:25, 23:20, 24:18, 24:19, 25:11
**Court's** [1] - 26:7
**Courthouse** [1] - 1:23
**cover** [1] - 6:20
**credence** [1] - 8:22
**CRR** [1] - 1:23
**CSR** [1] - 30:15
**CSR/CCR** [1] - 1:23
**custody** [1] - 22:10

**D**

**Daby** [17] - 2:14, 3:13, 6:2, 6:5, 8:9, 9:3, 9:25, 14:12, 15:10, 23:17, 23:23, 24:6, 25:10, 25:19, 26:22, 26:25, 29:13
**DABY** [1] - 1:9
**damages** [2] - 20:25, 21:23
**dangerous** [1] - 18:23

**Daniela** [1] - 3:8
**DANIELA** [2] - 2:3, 2:3
**DATED** [1] - 30:9
**dates** [1] - 7:23
**days** [3] - 8:15, 8:16
**dealing** [2] - 26:9
**dealt** [1] - 28:20
**dean** [10] - 8:8, 18:8, 18:10, 18:24, 19:4, 20:11, 20:15, 20:16, 22:19, 22:20
**December** [1] - 13:16
**decide** [4] - 9:7, 23:21, 28:8
**declaratory** [2] - 29:12, 29:14
**defend** [1] - 12:20
**Defendant** [6] - 2:10, 2:13, 8:22, 9:3, 9:25, 26:22
**defendant's** [1] - 25:22
**Defendants** [1] - 1:10
**defense** [1] - 12:20
**degree** [1] - 10:24
**demonstrate** [1] - 10:6
**denied** [1] - 9:21
**department** [1] - 10:4
**deposition** [4] - 24:21, 25:1, 28:3
**detail** [2] - 18:10, 18:11
**dice** [1] - 10:11
**different** [1] - 23:24
**difficult** [1] - 10:10
**digitally** [1] - 30:7
**diligence** [1] - 7:17
**directed** [2] - 4:17, 18:9
**directive** [1] - 10:21
**directives** [2] - 10:16, 11:1
**disability** [1] - 29:10
**disagree** [1] - 11:11
**discernable** [1] - 17:4
**discovery** [2] - 4:24, 10:6
**discrimination** [1] - 29:10
**discussing** [1] - 20:19
**dishonesty** [1] - 16:12
**dismiss** [8] - 11:14, 12:11, 13:24, 16:15, 17:18, 19:9, 23:5, 29:5
**DISTRICT** [3] - 1:1, 1:2, 1:18
**district** [1] - 4:21
**District** [1] - 1:23
**DIVISION** [1] - 1:3
**dn@danielananau.com** [1] - 2:4
**doctor** [1] - 22:2

**doctor-patient** [1] - 22:2
**document** [4] - 12:15, 12:17, 12:22, 13:16
**documents** [1] - 17:10
**dominant** [1] - 10:7
**doubtful** [1] - 22:11
**down** [1] - 4:12
**draft** [1] - 12:20
**draw** [1] - 10:12
**dress** [1] - 19:7
**due** [2] - 7:17, 8:22
**DUNN** [1] - 2:13
**during** [3] - 4:12, 6:7, 20:9

**E**

**economic** [1] - 20:25
**EEOC** [1] - 5:11
**either** [3] - 6:25, 18:10, 26:23
**element** [1] - 20:22
**elementary** [1] - 22:7
**elements** [2] - 11:23, 22:7
**emergency** [1] - 9:14
**employed** [1] - 28:17
**employee** [2] - 5:14, 18:23
**encountered** [1] - 9:1
**encouraged** [1] - 20:20
**end** [4] - 10:13, 12:14, 19:21, 22:20
**endure** [1] - 23:1
**enforced** [1] - 26:6
**engaged** [1] - 15:9
**English** [1] - 5:14
**ensuing** [1] - 9:23
**entire** [3] - 10:19, 28:10, 28:23
**entirely** [3] - 5:5, 5:20, 7:11
**entitled** [1] - 26:5
**equation** [1] - 8:10
**equitable** [6] - 4:20, 6:19, 7:16, 8:1, 11:2, 29:11
**escape** [1] - 19:8
**essentially** [1] - 26:8
**establish** [1] - 5:7
**et** [1] - 3:6
**event** [1] - 29:4
**events** [4] - 18:8, 18:16, 20:8, 20:14
**evidence** [6] - 7:9, 7:18, 10:11, 24:9, 24:12, 24:17
**ex** [1] - 22:21
**ex-student** [1] - 22:21
**examination** [2] - 9:13, 16:8

**example** [4] - 13:6, 13:12, 17:14, 22:24
**excuse** [1] - 23:6
**exhibit** [1] - 7:23
**existed** [1] - 26:15
**expected** [1] - 25:20
**expired** [2] - 7:8, 11:15
**Expires** [3] - 30:14, 30:15, 30:16
**explains** [1] - 7:6
**explicitly** [1] - 10:20
**extension** [1] - 12:21
**extraordinary** [7] - 5:4, 6:18, 6:19, 7:6, 8:23, 11:9, 11:11
**extreme** [2] - 4:22, 5:4
**extrinsic** [2] - 24:9, 24:12

## F

**face** [1] - 28:13
**facing** [1] - 4:3
**fact** [8] - 5:22, 7:5, 9:15, 10:8, 11:15, 21:4, 22:4, 26:14
**fact-intensive** [1] - 21:4
**fact-specific** [1] - 22:4
**factor** [1] - 6:7
**facts** [7] - 5:3, 5:11, 8:22, 9:6, 11:12, 13:25, 21:6
**faculty** [1] - 20:17
**fail** [1] - 23:12
**failed** [10] - 12:14, 12:15, 12:22, 15:23, 15:24, 16:2, 16:7, 16:8, 18:3, 23:23
**fails** [1] - 29:2
**failure** [8] - 9:2, 9:25, 11:22, 13:2, 13:4, 14:15, 16:12
**fairly** [2] - 23:13, 27:25
**family** [1] - 5:17
**far** [1] - 17:10
**far-flung** [1] - 17:10
**farthest** [1] - 27:20
**favors** [1] - 24:13
**few** [1] - 15:21
**file** [3] - 6:9, 6:16, 6:25
**filed** [2] - 7:10, 7:15
**filing** [4] - 6:11, 7:4, 8:16, 10:9
**FIRM** [1] - 2:6
**first** [14] - 4:22, 5:3, 6:4, 9:11, 9:19, 9:20, 11:24, 11:25, 12:13, 14:11, 16:18, 17:3, 18:5, 20:7
**flaw** [1] - 25:6
**flows** [1] - 19:6
**flung** [1] - 17:10

**flunked** [2] - 6:8, 6:14
**flunking** [1] - 7:22
**focus** [2] - 6:10, 9:9
**focused** [1] - 6:4
**follow** [2] - 10:14, 10:18
**followed** [3] - 10:15, 10:21, 11:1
**following** [1] - 27:8
**FOR** [1] - 1:2
**forbids** [1] - 14:4
**foregoing** [2] - 27:8, 30:3
**foreign** [1] - 6:24
**foreseeable** [2] - 18:21, 18:24
**foreseeably** [1] - 18:24
**former** [5] - 6:13, 19:23, 20:3, 21:1, 22:21
**forth** [2] - 16:18, 23:14
**forward** [3] - 10:6, 25:12, 29:19
**four** [3] - 6:9, 8:24, 9:23
**front** [1] - 4:12
**fulfilled** [1] - 15:6
**full** [3] - 12:25, 14:15, 17:1
**fuller** [1] - 25:12
**funds** [1] - 26:21
**furthermore** [2] - 27:13, 27:23
**futile** [1] - 29:8
**future** [2] - 6:6, 25:12

## G

**gentleman** [1] - 6:23
**gist** [1] - 14:24
**given** [3] - 12:19, 12:21, 13:17
**Glendale** [1] - 2:5
**global** [1] - 12:4
**government** [1] - 7:2
**graduate** [1] - 15:7
**GRAHAM** [1] - 2:13
**grant** [8] - 23:16, 25:4, 25:18, 25:23, 26:22, 27:10, 28:3, 28:23
**granted** [1] - 9:15
**grantees** [1] - 25:5
**Gronke** [1] - 15:25
**group** [1] - 5:24

## H

**hand** [2] - 23:17, 23:18
**harm** [3] - 5:18, 18:21, 20:25
**harmed** [1] - 18:25
**hate** [1] - 4:6
**head** [1] - 20:15

**hear** [1] - 4:7
**held** [1] - 6:24
**help** [4] - 4:10, 9:6, 9:7, 9:18
**helpful** [1] - 24:19
**hire** [1] - 22:25
**homework** [1] - 16:9
**Honor** [30] - 3:21, 4:6, 4:11, 4:20, 8:21, 10:11, 11:9, 11:19, 13:12, 13:24, 14:17, 14:22, 15:14, 15:21, 19:4, 19:14, 20:13, 21:3, 21:16, 23:11, 24:4, 24:16, 24:25, 25:8, 25:18, 26:3, 27:4, 27:17, 28:5, 28:12
**HONORABLE** [1] - 1:17

## I

**idea** [4] - 20:24, 22:9, 24:12, 26:25
**identification** [2] - 11:25, 12:4
**identified** [1] - 13:7
**identify** [6] - 4:23, 13:4, 13:8, 17:7, 18:20, 20:7
**ignore** [3] - 14:9, 25:22, 25:23
**illustrates** [1] - 13:13
**immediately** [1] - 9:12
**implies** [1] - 27:21
**imply** [1] - 27:21
**impose** [1] - 16:19
**imposed** [1] - 16:23
**impossible** [1] - 7:10
**imprisoned** [1] - 6:23
**improperly** [1] - 18:11
**IN** [1] - 1:1
**inapposite** [2] - 5:12, 6:22
**inappropriate** [1] - 14:13
**include** [4] - 24:7, 27:1, 27:6, 27:8
**includes** [1] - 26:2
**including** [3] - 22:8, 22:14
**incommunicado** [1] - 6:24
**incumbent** [1] - 16:2
**indeed** [1] - 24:5
**indication** [3] - 7:21, 12:7, 13:11
**individually** [1] - 1:9
**individuals** [2] - 10:16, 10:17
**information** [6] - 10:23, 11:8, 13:19, 27:24, 28:2, 28:3

**informed** [1] - 21:12
**informing** [1] - 26:7
**informs** [1] - 26:14
**initial** [1] - 28:13
**injured** [1] - 18:25
**inquiry** [1] - 21:4
**instead** [1] - 29:14
**INSTITUTE** [1] - 1:8
**Institute** [4] - 2:10, 3:6, 3:15, 5:8
**institution** [2] - 20:2, 20:4
**insuperable** [1] - 23:5
**intellectual** [1] - 29:3
**intended** [6] - 5:3, 6:20, 18:1, 18:18, 18:21, 29:13
**intends** [1] - 18:2
**intensive** [1] - 21:4
**interregnum** [1] - 23:1
**interrupt** [1] - 4:6
**involved** [1] - 21:7
**issue** [7] - 3:19, 3:22, 4:23, 9:4, 15:8, 24:4, 29:11
**itself** [5] - 24:14, 25:8, 25:23, 28:22, 28:25

## J

**January** [3] - 6:8, 18:4, 19:23
**jeopardize** [1] - 6:13
**jeopardizing** [1] - 6:6
**job** [1] - 5:17
**journal** [1] - 24:3
**judge** [1] - 4:12
**JUDGE** [1] - 1:18
**judgment** [2] - 23:8, 28:24
**July** [3] - 1:7, 3:1, 30:9
**June** [1] - 8:8

## K

**keep** [1] - 5:20
**kept** [1] - 6:11
**KEVIN** [1] - 2:7
**Kevin** [1] - 3:10
**kevin@ braguelawfirm.com** [1] - 2:7
**key** [1] - 24:4
**kill** [3] - 5:16, 5:17
**kind** [1] - 6:18
**kinds** [1] - 5:19
**known** [1] - 18:22

## L

**lack** [4] - 12:25, 14:16, 17:1, 19:13
**language** [4] - 15:14, 28:5, 28:7, 28:8

**large** [1] - 8:25
**last** [1] - 8:25
**late** [2] - 7:3, 8:16
**latter** [1] - 20:13
**laundry** [1] - 12:1
**LAW** [2] - 2:3, 2:6
**law** [8] - 3:24, 4:1, 4:20, 8:11, 18:19, 21:21, 22:1, 29:4
**lawsuit** [9] - 6:9, 6:11, 6:16, 6:25, 7:10, 7:15, 8:16, 9:5, 10:9
**lawyer** [2] - 22:25, 23:1
**least** [2] - 17:6, 28:17
**leaving** [1] - 19:19
**left** [3] - 18:3, 18:16, 29:6
**legal** [1] - 14:1
**letter** [21] - 5:22, 5:23, 6:1, 6:17, 7:11, 7:13, 7:20, 7:23, 7:25, 8:4, 8:6, 8:7, 16:10, 18:7, 18:12, 18:13, 19:5, 19:20, 23:15, 25:8
**letters** [4] - 8:4, 8:18, 23:19, 25:9
**level** [1] - 15:25
**LIEBMAN** [1] - 2:10
**limitation** [1] - 29:11
**limitations** [12] - 3:19, 3:22, 4:2, 4:16, 7:7, 8:14, 9:7, 11:7, 11:15, 11:20, 18:17, 19:9
**limited** [1] - 26:17
**line** [2] - 17:11
**list** [1] - 12:2
**listed** [1] - 13:11
**living** [1] - 21:8
**LLP** [2] - 2:10, 2:13
**loco** [1] - 22:9
**look** [5] - 5:22, 28:5, 28:7, 28:9, 28:10
**looking** [1] - 14:19
**lost** [1] - 12:17
**loyal** [1] - 6:12
**loyalty** [1] - 6:5

## M

**majority** [1] - 22:15
**manuscript** [2] - 9:11, 14:8
**Mariela** [1] - 3:13
**MARIELA** [1] - 1:8
**math** [1] - 8:13
**matriculated** [1] - 20:18
**matter** [4] - 3:24, 22:22, 24:22, 28:13
**mean** [2] - 27:1, 28:2
**meaning** [2] - 11:17,

25:24
**means** [2] - 25:24, 30:5
**medical** [1] - 9:14
**memorandum** [1] - 6:21
**mentioned** [2] - 8:2, 13:14
**Merit** [1] - 30:13
**met** [2] - 10:16, 12:14
**MICHAEL** [1] - 1:17
**microphone** [2] - 4:8, 19:2
**might** [3] - 22:22, 24:8, 24:12
**MILLER** [1] - 2:13
**missing** [7] - 5:5, 5:21, 7:11, 12:6, 16:16, 23:2, 23:3
**moment** [2] - 14:18, 14:20
**month** [2] - 7:24, 12:21
**morning** [1] - 8:15
**MOSMAN** [1] - 1:17
**most** [1] - 9:1
**motion** [7] - 13:24, 23:8, 23:21, 25:7, 25:12, 25:13, 25:14
**move** [2] - 10:6, 19:9
**moving** [4] - 3:19, 11:18, 17:21, 23:10
**MR** [1] - 3:10
**MS** [41] - 3:8, 3:12, 3:14, 3:21, 4:5, 4:6, 4:11, 4:20, 8:21, 9:9, 9:20, 9:24, 10:10, 11:19, 13:1, 13:4, 13:10, 13:24, 14:17, 14:22, 15:4, 15:14, 15:21, 16:3, 17:22, 19:3, 19:13, 20:13, 21:3, 21:15, 23:11, 24:16, 24:25, 25:6, 25:18, 26:3, 26:13, 27:3, 27:17, 28:4, 28:12
**murky** [1] - 22:3
**must** [1] - 27:22
**mutual** [1] - 16:21

## N

**name** [2] - 3:7, 19:5
**namely** [1] - 10:17
**NANAU** [20] - 2:3, 2:3, 3:8, 4:6, 8:21, 9:9, 9:20, 9:24, 10:10, 13:24, 14:17, 14:22, 15:4, 15:14, 20:13, 21:3, 21:15, 25:18, 26:3, 26:13
**Nanau** [4] - 3:8, 9:17, 11:10, 16:5

**NASH** [1] - 2:13
**nature** [4] - 16:20, 21:23, 25:21, 28:21
**nearby** [1] - 17:15
**necessarily** [1] - 26:2
**necessary** [2] - 4:23, 17:11
**need** [2] - 11:24, 23:21
**needs** [3] - 17:7, 23:12, 27:4
**negligence** [6] - 12:18, 18:2, 18:7, 19:6, 20:8, 21:19
**negligent** [7] - 17:20, 18:18, 18:19, 20:10, 20:23, 23:6
**nervous** [1] - 14:22
**never** [2] - 6:3, 9:15
**New** [1] - 2:5
**next** [1] - 9:23
**Nicholson** [1] - 20:15
**Nigel** [1] - 20:14
**non** [1] - 5:14
**non-English** [1] - 5:14
**none** [2] - 19:1, 19:3
**None** [1] - 7:4
**nothing** [6] - 14:6, 14:9, 18:11, 19:4, 24:5, 27:14
**notice** [2] - 9:25, 11:5
**November** [1] - 19:22
**number** [2] - 8:15, 21:25
**NW** [1] - 2:8

## O

**objection** [1] - 3:24
**obligate** [1] - 15:3
**obligation** [2] - 16:20, 16:23
**obligations** [7] - 15:1, 15:7, 15:13, 15:15, 15:18, 16:21, 26:16
**obvious** [3] - 22:1, 23:13, 27:25
**obviously** [1] - 6:24
**occurred** [2] - 9:4, 20:9
**October** [5] - 7:20, 8:5, 8:8, 19:21, 19:22
**oddness** [1] - 25:11
**OF** [3] - 1:2, 1:14, 2:3
**offer** [1] - 23:15
**offering** [1] - 23:15
**OFFICE** [1] - 2:3
**old** [2] - 19:8, 21:8
**older** [1] - 18:8
**one** [24] - 6:22, 8:7, 10:3, 11:24, 12:13, 12:21, 17:11, 17:13, 17:16, 19:19, 19:20, 20:22, 21:15, 21:22,

22:11, 22:24, 23:5, 23:17, 23:24, 25:9, 25:10, 29:6, 29:17
**opportunity** [4] - 7:12, 10:22, 12:19, 24:21
**opposition** [1] - 5:10
**oral** [2] - 3:5, 9:13
**Oral** [1] - 1:15
**order** [1] - 23:21
**OREGON** [1] - 1:2
**Oregon** [9] - 1:8, 1:24, 2:8, 2:12, 2:15, 11:21, 21:21, 29:2, 30:15
**original** [1] - 30:6
**otherwise** [1] - 22:16
**outside** [1] - 8:14
**own** [10] - 10:5, 10:15, 12:17, 12:23, 12:25, 14:15, 15:16, 17:1, 27:13

## P

**p.k.runkles** [1] - 2:14
**p.k.runkles-pearson @millernash.com** [1] - 2:14
**p.m** [2] - 3:1, 29:22
**papers** [3] - 4:1, 12:17, 27:7
**paragraphs** [1] - 14:19
**parameters** [1] - 26:15
**parentis** [1] - 22:9
**parents** [2] - 22:10, 22:15
**parsing** [1] - 17:4
**part** [3] - 15:2, 16:4, 18:21
**particular** [2] - 19:18, 28:17
**parties** [2] - 4:15, 21:24
**party** [4] - 3:20, 11:18, 17:21, 23:10
**patent** [1] - 29:4
**patient** [1] - 22:2
**PAULA** [1] - 2:10
**Paula** [1] - 3:14
**PC** [1] - 2:3
**Pearson** [2] - 3:12, 26:25
**PEARSON** [10] - 2:14, 3:12, 23:11, 24:16, 24:25, 25:6, 27:3, 27:17, 28:4, 28:12
**pearson@millernash .com** [1] - 2:14
**people** [1] - 27:21
**perform** [1] - 16:2
**performance** [4] - 12:25, 14:15, 16:23, 17:1

**performed** [1] - 25:19
**period** [7] - 7:6, 7:22, 8:4, 8:11, 8:17, 11:6, 20:11
**permit** [1] - 14:18
**permitted** [2] - 14:7, 14:9
**person** [2] - 19:23, 21:13
**personal** [1] - 10:1
**persons** [1] - 18:21
**pertained** [1] - 15:6
**phase** [3] - 28:8, 28:9, 28:10
**physical** [1] - 20:25
**pick** [2] - 4:17, 11:16
**picked** [2] - 28:20, 29:15
**PK** [2] - 2:14, 3:12
**plagiarism** [1] - 14:4
**plain** [1] - 25:23
**Plaintiff** [2] - 1:6, 2:3
**plaintiff** [44] - 3:8, 3:10, 3:25, 4:18, 4:22, 5:7, 5:10, 6:21, 7:2, 7:5, 7:9, 8:3, 8:9, 9:24, 12:1, 12:5, 12:7, 14:2, 14:15, 15:22, 16:2, 16:3, 16:16, 16:20, 16:24, 17:7, 17:9, 17:25, 18:2, 18:7, 18:12, 18:16, 18:20, 18:25, 20:7, 23:14, 23:17, 23:22, 23:24, 24:9, 25:9, 25:17, 27:25
**plaintiff's** [8] - 4:1, 5:13, 5:22, 8:21, 18:6, 24:21, 25:7, 27:13
**play** [1] - 13:9
**plead** [6] - 11:22, 12:10, 14:15, 17:1, 20:23, 20:25
**pleading** [10] - 11:24, 12:1, 13:2, 13:15, 15:15, 15:17, 16:18, 23:4, 23:13
**pleadings** [3] - 12:24, 17:5, 29:15
**pled** [1] - 14:1
**plus** [1] - 13:4
**point** [4] - 6:7, 24:12, 24:19, 25:1
**pointed** [1] - 27:6
**policies** [17] - 10:5, 12:2, 12:9, 13:7, 13:10, 13:18, 13:21, 14:3, 14:6, 14:7, 14:9, 14:25, 15:9, 15:16, 26:6, 26:8
**policy** [7] - 12:5, 13:5, 13:8, 13:9, 14:3,

14:4
**political** [2] - 15:25, 16:8
**Political** [1] - 23:25
**PORTLAND** [1] - 1:3
**Portland** [5] - 1:8, 1:24, 2:8, 2:12, 2:15
**possibility** [1] - 29:18
**possible** [4] - 20:19, 21:2, 22:2, 22:6
**posted** [1] - 7:24
**potential** [1] - 17:24
**preceded** [1] - 7:17
**preempted** [1] - 29:4
**prejudice** [6] - 11:4, 11:14, 16:16, 17:18, 23:7, 29:5
**prep** [1] - 21:8
**prerequisite** [1] - 7:3
**present** [6] - 7:4, 7:9, 19:1, 19:3, 20:1, 24:18
**presentation** [1] - 23:25
**presented** [2] - 7:5, 24:18
**preserve** [1] - 7:17
**prevent** [1] - 10:9
**prevented** [1] - 5:8
**principal** [1] - 13:2
**problem** [1] - 23:4
**problematic** [1] - 10:1
**problems** [3] - 9:1, 12:16, 23:4
**procedure** [1] - 6:19
**procedures** [4] - 10:5, 10:14, 10:18, 12:2
**proceedings** [2] - 29:22, 30:5
**PROCEEDINGS** [1] - 1:14
**process** [5] - 9:4, 9:16, 10:2, 10:12, 14:6
**produce** [1] - 12:15
**professor** [1] - 6:13
**Professor** [12] - 3:13, 6:1, 6:5, 8:9, 14:12, 15:10, 15:25, 23:17, 23:23, 24:6, 25:10, 27:25
**professor's** [1] - 24:2
**professors** [7] - 7:12, 10:3, 10:17, 10:18, 14:5, 16:10, 20:20
**prohibits** [1] - 14:4
**project** [1] - 26:14
**promulgated** [1] - 15:5
**propensities** [1] - 18:23
**proper** [1] - 21:10
**properly** [1] - 12:10
**property** [1] - 29:3

5

**protected** [1] - 18:22
**provide** [3] - 10:22, 12:19, 23:23
**provided** [2] - 9:24, 27:22
**provides** [1] - 12:1
**providing** [1] - 26:21
**provision** [2] - 17:8, 17:16
**provisions** [1] - 27:5
**publications** [1] - 27:7
**published** [1] - 24:2
**pull** [1] - 19:2
**purpose** [1] - 25:23
**pursuant** [2] - 15:16, 26:21

## Q

**quit** [1] - 5:17

## R

**ran** [1] - 11:7
**rape** [1] - 5:16
**raped** [1] - 5:15
**reaches** [1] - 27:20
**read** [6] - 4:1, 14:18, 17:12, 27:1, 27:4, 28:22
**readily** [1] - 16:22
**reading** [1] - 28:25
**real** [1] - 12:4
**really** [5] - 6:16, 19:7, 21:4, 22:22, 29:13
**Realtime** [1] - 30:13
**reason** [2] - 13:17, 13:20
**reasons** [3] - 6:4, 9:4, 19:9
**recess** [1] - 29:20
**recognition** [1] - 19:15
**recognize** [2] - 19:19, 20:3
**recognized** [1] - 20:1
**reconsidered** [1] - 10:25
**record** [2] - 3:7, 30:4
**REED** [2] - 1:8, 1:8
**Reed** [57] - 2:10, 3:6, 3:14, 5:8, 5:25, 6:1, 6:8, 6:11, 6:15, 6:18, 7:13, 7:22, 7:24, 8:22, 8:24, 9:20, 9:24, 10:4, 10:8, 10:13, 11:4, 11:17, 12:16, 13:10, 13:19, 14:7, 14:9, 14:25, 15:9, 17:8, 17:13, 17:22, 17:23, 18:3, 18:8, 18:13, 18:16, 19:17, 19:23, 19:24, 20:12, 20:16, 20:19, 21:1, 21:11, 23:16,

24:13, 25:5, 25:8, 25:9, 25:10, 26:7, 26:18, 26:21, 27:9
**reference** [2] - 26:16, 26:17
**regard** [1] - 22:4
**regarding** [2] - 14:6, 20:14
**Registered** [1] - 30:13
**relations** [1] - 14:5
**relationship** [18] - 10:2, 19:12, 19:14, 19:16, 20:1, 20:3, 21:1, 21:4, 21:10, 21:11, 21:12, 21:24, 22:5, 22:12, 22:15, 22:17, 22:21, 22:23
**relationships** [2] - 21:25, 22:3
**relief** [2] - 29:12, 29:14
**rely** [3] - 10:8, 24:10, 27:15
**relying** [2] - 9:22, 13:3
**remarkably** [1] - 4:24
**remedied** [1] - 10:20
**remedy** [1] - 6:19
**remember** [1] - 19:20
**remotely** [1] - 11:12
**renewal** [1] - 6:2
**repeatedly** [1] - 5:15
**reply** [1] - 15:20
**Reporter** [1] - 1:23, 30:13, 30:13
**request** [1] - 12:11
**requested** [1] - 9:14
**requesting** [2] - 9:16, 10:14
**requests** [1] - 9:21
**require** [2] - 13:19, 14:8
**required** [3] - 10:23, 16:7, 21:17
**requirement** [4] - 7:16, 25:20, 26:20, 28:18
**requirements** [4] - 11:13, 13:5, 18:20, 21:22
**requires** [4] - 24:6, 25:3, 26:20, 27:12
**requiring** [3] - 24:7, 25:15, 28:14
**research** [3] - 26:14, 27:9, 27:10
**respect** [1] - 18:5
**responded** [1] - 16:11
**response** [6] - 8:20, 8:21, 13:23, 21:18, 24:10
**responsibilities** [1] - 16:4
**rest** [1] - 27:5
**result** [1] - 21:13

**resulting** [1] - 27:7
**retention** [6] - 17:20, 18:19, 20:10, 20:11, 20:23, 23:6
**return** [1] - 20:19
**returning** [1] - 22:23
**review** [1] - 24:1
**revoke** [1] - 14:7
**revoked** [2] - 9:13, 13:16
**revoking** [2] - 13:17, 13:20
**rhunt@barran.com** [1] - 2:11
**rights** [1] - 7:18
**risk** [1] - 18:21
**RMR** [1] - 1:23
**roadblocks** [1] - 10:16
**Room** [1] - 1:24
**root** [1] - 21:19
**rooted** [1] - 20:17
**rough** [1] - 17:4
**rules** [1] - 15:5
**rulings** [1] - 29:15
**Runkles** [2] - 3:12, 26:25
**RUNKLES** [10] - 2:14, 3:12, 23:11, 24:16, 24:25, 25:6, 27:3, 27:17, 28:4, 28:12
**Runkles-Pearson** [2] - 3:12, 26:25
**RUNKLES-PEARSON** [10] - 2:14, 3:12, 23:11, 24:16, 24:25, 25:6, 27:3, 27:17, 28:4, 28:12
**running** [1] - 7:7
**runs** [1] - 8:13
**Rutledge** [1] - 2:4
**Ryan** [1] - 1:23
**RYAN** [1] - 30:12

## S

**satisfactorily** [1] - 15:4
**satisfies** [1] - 11:12
**scholarly** [1] - 26:4
**school** [8] - 6:8, 12:2, 18:3, 21:8, 21:9, 21:10, 22:5, 22:7
**school-student** [1] - 22:5
**schools** [1] - 22:10
**science** [2] - 15:25, 16:8
**Science** [1] - 24:1
**seated** [1] - 4:9
**second** [6] - 5:7, 6:5, 12:13, 14:8, 15:17, 17:7

**secondarily** [1] - 12:6
**secondary** [1] - 22:7
**see** [6] - 4:25, 7:14, 7:23, 13:14, 15:24, 19:8
**seeking** [2] - 20:24, 24:9
**seem** [1] - 4:15
**sending** [1] - 18:13
**senior** [1] - 15:25
**sent** [2] - 18:7, 19:22
**separate** [2] - 23:19, 28:19
**separately** [1] - 28:20
**series** [2] - 9:1, 9:14
**set** [2] - 16:18, 17:10
**setting** [2] - 15:23, 22:6
**several** [2] - 11:23, 14:2
**sexual** [1] - 14:5
**shared** [1] - 22:10
**shepherd** [1] - 9:3
**Shin** [1] - 21:7
**show** [4] - 11:24, 12:20, 12:23, 18:22
**shows** [2] - 5:13, 10:8
**sic** [1] - 18:4
**side** [1] - 12:7
**sign** [2] - 13:15, 13:20
**sign-off** [2] - 13:15, 13:20
**signature** [3] - 30:6, 30:7
**signed** [1] - 30:7
**signing** [1] - 30:3
**similar** [1] - 21:7
**similarly** [3] - 6:22, 7:16, 21:11
**simply** [2] - 6:12, 8:10
**sit** [1] - 19:15
**sitting** [1] - 4:12
**situation** [3] - 8:23, 10:19, 10:24
**six** [1] - 11:21
**six-year** [1] - 11:21
**slice** [1] - 10:11
**so-called** [1] - 23:16
**solely** [1] - 28:5
**somewhere** [1] - 17:15
**sorry** [4] - 8:5, 14:22, 15:8, 15:17
**sort** [7] - 3:17, 12:4, 13:19, 20:8, 20:23, 22:9, 22:10
**sought** [1] - 21:23
**speaker** [1] - 5:14
**special** [15] - 19:11, 19:14, 19:16, 20:1, 20:3, 21:1, 21:3, 21:12, 21:23, 22:1, 22:2, 22:5, 22:12, 22:17, 22:23

**specific** [6] - 10:16, 14:2, 14:18, 17:11, 18:20, 22:4
**specifically** [3] - 12:13, 15:22, 27:6
**specificity** [1] - 16:19
**standard** [1] - 13:25
**standing** [1] - 8:9
**start** [3] - 3:18, 3:19, 23:10
**state** [4] - 3:7, 11:22, 18:19, 29:9
**statement** [1] - 27:6
**statements** [1] - 5:2
**STATES** [2] - 1:1, 1:18
**states** [1] - 15:15
**States** [1] - 1:23
**stating** [1] - 27:6
**statue** [1] - 11:6
**statute** [15] - 3:22, 3:25, 4:2, 4:16, 7:7, 7:8, 8:14, 9:6, 11:7, 11:15, 11:20, 11:21, 18:17, 19:8, 29:11
**statutory** [1] - 11:6
**stenographic** [1] - 30:4
**stick** [1] - 9:7
**still** [4] - 8:13, 8:15, 20:18, 20:19
**stipend** [1] - 23:15
**straight** [2] - 6:2, 20:8
**structure** [1] - 18:1
**student** [21] - 13:19, 19:16, 19:20, 19:22, 19:24, 20:2, 20:3, 20:9, 20:18, 21:1, 21:8, 21:10, 21:13, 22:5, 22:18, 22:19, 22:20, 22:21
**student-college** [1] - 22:20
**student-dean** [1] - 22:20
**students** [3] - 14:5, 15:6, 22:13
**study** [1] - 15:5
**sub** [1] - 13:9
**sub-policy** [1] - 13:9
**subject** [2] - 6:1, 29:6
**submit** [3] - 14:8, 20:2, 20:21
**substandard** [2] - 12:19, 13:21
**successful** [1] - 8:25
**successfully** [1] - 22:12
**sue** [1] - 7:3
**sufficient** [2] - 13:25, 21:6
**suggested** [2] - 10:19, 22:4
**suggestion** [1] - 8:12

**suggests** [1] - 8:9
**suit** [1] - 7:4
**Suite** [2] - 2:11, 2:15
**summary** [2] - 23:8, 28:23
**summer** [1] - 23:15
**supervised** [1] - 18:11
**supervision** [2] - 17:20, 18:19
**supervisor** [1] - 5:15
**support** [2] - 4:25, 24:10
**supported** [1] - 27:9
**supports** [1] - 24:22
**suppose** [1] - 27:18
**surprising** [1] - 5:12
**surrounding** [2] - 27:24, 28:2
**survive** [1] - 22:20
**SW** [3] - 1:24, 2:11, 2:15
**Szwarcberg** [13] - 2:14, 3:13, 9:3, 9:25, 14:12, 23:17, 23:23, 24:6, 25:10, 25:19, 26:22, 27:25, 29:12
**SZWARCBERG** [1] - 1:9

**T**

**telephone** [1] - 2:3
**tenure** [4] - 8:9, 10:13, 10:20, 20:16
**Tenure** [2] - 5:25, 7:14
**term** [12] - 16:1, 17:12, 24:7, 24:8, 25:3, 25:15, 27:13, 27:23, 28:14, 28:17, 28:22
**terms** [6] - 16:19, 16:22, 24:14, 24:23, 26:10, 28:25
**testimony** [4] - 24:22, 25:1, 27:14, 28:3
**textual** [1] - 28:3
**THE** [42] - 1:1, 1:2, 1:17, 3:5, 3:16, 4:3, 4:9, 4:15, 8:19, 9:6, 9:17, 9:22, 10:7, 11:10, 12:23, 13:2, 13:7, 13:22, 14:14, 14:21, 15:1, 15:11, 15:19, 16:1, 16:14, 19:2, 19:11, 20:6, 20:22, 21:14, 21:20, 24:11, 24:23, 25:4, 25:16, 26:1, 26:11, 26:24, 27:15, 28:2, 28:7, 28:16
**theft** [1] - 29:3
**thematically** [1] - 3:17
**theory** [2] - 18:15, 22:12
**therefore** [3] - 18:12,

23:5, 28:23
**thesis** [15] - 9:2, 9:3, 9:11, 10:2, 12:15, 12:17, 13:16, 13:20, 14:6, 14:7, 15:23, 16:6, 16:7
**they've** [1] - 11:5
**third** [1] - 24:1
**three** [2] - 13:15, 23:24
**timeliness** [1] - 18:4
**timely** [4] - 5:9, 5:20, 6:11, 6:25
**Title** [2] - 3:18, 29:10
**titled** [1] - 30:5
**today** [3] - 3:5, 13:3, 19:15
**together** [2] - 25:25, 27:21
**toll** [1] - 8:17
**tolling** [16] - 4:3, 4:17, 4:21, 4:23, 4:25, 5:3, 6:19, 7:16, 8:1, 8:11, 9:8, 9:18, 9:23, 11:2, 11:13, 29:11
**took** [2] - 6:9, 6:17
**tortured** [1] - 6:23
**trained** [1] - 18:10
**training** [1] - 20:11
**transcript** [2] - 30:4, 30:6
**TRANSCRIPT** [1] - 1:14
**treat** [1] - 8:10
**treatment** [1] - 14:13
**Tree** [3] - 5:11, 5:13
**tried** [1] - 10:14
**true** [2] - 27:17, 30:4
**truthful** [1] - 16:12
**turn** [10] - 11:18, 12:22, 14:14, 16:6, 16:7, 16:8, 17:21, 23:8, 23:9, 24:13
**two** [22] - 3:25, 4:2, 4:16, 6:4, 7:7, 7:25, 8:4, 8:18, 10:3, 10:18, 11:1, 13:14, 16:10, 16:17, 17:18, 17:24, 18:5, 18:17, 21:18, 23:19, 25:8, 29:17
**two-year** [4] - 3:25, 4:2, 4:16, 18:17

**U**

**unable** [1] - 15:11
**unclear** [1] - 17:25
**uncomfortable** [1] - 4:12
**under** [4] - 3:18, 19:25, 28:24, 29:9
**undertook** [2] - 15:2, 15:13
**unfairly** [1] - 18:10

**UNITED** [2] - 1:1, 1:18
**United** [1] - 1:23
**university** [1] - 22:13
**unless** [3] - 10:12, 24:14, 27:15
**untimely** [1] - 18:17
**unwavering** [1] - 6:5
**up** [12] - 4:17, 5:13, 6:3, 11:16, 11:24, 12:20, 18:3, 18:13, 18:16, 19:7, 28:20, 29:15

**V**

**variety** [1] - 29:13
**various** [1] - 20:20
**via** [1] - 2:3
**view** [2] - 22:11, 26:7
**vis-à-vis** [1] - 10:24
**vs** [1] - 1:7

**W**

**waited** [4] - 7:24, 7:25, 11:1, 11:6
**wants** [2] - 29:9, 29:12
**Washington** [1] - 30:14
**ways** [1] - 29:13
**weeks** [2] - 16:17, 29:17
**weeks'** [1] - 17:19
**whatsoever** [1] - 24:7
**White** [1] - 1:23
**WHITE** [1] - 30:12
**whole** [1] - 7:24
**Willamette** [3] - 5:11, 5:13
**wish** [1] - 15:20
**withdrawing** [1] - 17:14
**woman** [1] - 5:13
**wonder** [2] - 6:3, 8:1
**word** [6] - 25:24, 26:11, 27:11, 27:16, 27:19, 28:10
**words** [1] - 15:12
**works** [1] - 23:24
**write** [3] - 6:17, 7:11, 7:13
**writing** [1] - 7:22
**written** [3] - 14:11, 19:21
**wrote** [6] - 5:23, 7:20, 7:25, 8:4, 8:7, 24:2

**Y**

**year** [6] - 3:25, 4:2, 4:16, 8:25, 11:21, 18:17
**years** [9] - 6:8, 6:9, 7:7, 7:25, 8:24, 9:23, 11:1, 21:8, 21:18

**York** [1] - 2:5
**young** [1] - 21:13