IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ANDREW CHOI**,

       Plaintiff,

v.

**REED INSTITUTE,** doing business as **REED COLLEGE;** and **MARIELA L. SZWARCBERG DABY,** individually,

       Defendants.

No. 3:17-cv-2064-MO

OPINION AND ORDER

**MOSMAN, J.**,

       This matter comes before me on Defendant Reed College's ("Reed" or the "College") Motion for Summary Judgment. I heard oral argument on the Motion on November 30, 2018. After careful consideration, I GRANT Reed's Motion [62] and dismiss Plaintiff Andrew Choi's ("Choi") claims with prejudice.

## BACKGROUND

       Choi enrolled in Reed's four-year bachelor degree program in 2009. [49 at ¶ 5]. Choi is disabled due to Attention Deficit Disorder ("ADD"). [*Id.* at ¶¶16, 18]. Shortly after he started at Reed, Choi formally requested accommodations due to his ADD-related disability from the College's Disability Support Services ("DSS") office. [*Id.*]. Choi provided the DSS office with medical records establishing his ADD diagnosis and explained that he would "from time to time"

1 – OPINION AND ORDER

need disability related accommodations like extra time for exams and to complete assignments. [*Id.* at ¶ 16]. Each semester that Choi attended Reed, he provided the DSS office with medical documentation of his ADD diagnosis and requested accommodation for his ADD-related disability. [*Id.* at ¶ 18; 63-1 at 110:15-111:1].

In 2012, when Choi was a student in one of political science professor Mariela Szwarcberg Daby's seminars, he went to her house for a party and they had sex. [49, ¶¶ 35, 41, 44]. Weeks later, Daby became Choi's thesis advisor. [*Id.* at 46]. Daby and Choi had sex again in the summer of 2013. [*Id.* at ¶¶ 47-48].

During the summer of 2013, Choi and Daby worked together to apply for the Alta S. Corbett Grant for Research. [49 at ¶ 128]. Daby planned to use the Corbett Grant to write a book about voting, and Choi hoped to earn a publishing credit as her research and writing assistant. [*Id.* at ¶¶ 130, 129]. Even though Choi provided original content, Daby did not acknowledge his contributions. [*Id.* at ¶¶ 136, 139, 142-143].

In early September 2013, Daby ended her sexual relationship with Choi but told him she would remain his thesis advisor. [49 at ¶¶ 49-53]. Around the time their sexual relationship ended, Choi complained to political science professor Darius Rejali ("Rejali") that he had interpersonal difficulties working with Daby and expressed concerns about his ability to complete his thesis with Daby as his advisor. [*Id.*]. Rejali reported Choi's concerns to the Dean of Faculty Nigel Nicholson ("Nicholson"). He also suggested Choi tell Paul Gronke, another political science professor who Choi had chosen to serve on his thesis panel, about Daby. [*Id.* at ¶¶ 58-59]. Choi met with Gronke. [*Id.* at ¶ 61]. When complaining about Daby, Choi did not tell Rejali, Gronke, or anyone else about their sexual relationship. [63-1 at pp. 101:14-25,

103:16]. Neither Nicholson nor Gronke responded to Choi's fall 2013 complaints about Daby. [49 at ¶¶ 60, 62].

Choi delivered a final draft of his thesis by the December 10, 2013, due date. [49. at ¶ 70]. Daby signed off on the draft. Choi was scheduled to defend his thesis in an oral exam on December 12, 2019. [*Id.* at ¶ 71]. Choi, however, did not attend his oral exam due to a severe nosebleed, which he described as a "medical emergency" related to his hemorrhagic telangiectasia, another disabling condition from which Choi suffered. [*Id.* at ¶¶ 72, 76, 78]. Daby did not reschedule Choi's oral examination. [*Id.* at ¶ 77]. Instead, she sent him an email revoking her sign off on his thesis, telling him he would not be able to graduate because he did not defend his thesis, and urging him to think of this as "an opportunity to improve his thesis." [*Id.* at ¶ 83].

Subsequently, Choi received conflicting information about the deadline for submitting the second draft of his thesis. Daby told him January 22, 2014, and Marc Fowler, Reed's thesis advisor, told him January 27, 2014. [49 at ¶¶ 91-92]. When Choi attempted to turn in his thesis on January 27, 2014, Reed's Registrar Nora McLaughlin ("McLaughlin") told him that she could not accept his draft because he had missed the deadline. [*Id.* at ¶¶94, 95]. McLaughlin told him he had failed his thesis and would not graduate. [*Id.*]. On the same day, Gronke rejected a paper for his "PS 333 class" that Gronke had given Choi an extension to complete because the paper was "a couple hours late." [*Id.* at ¶ 98].

Choi continued to communicate with various employees and administrators at Reed to request accommodations for his thesis and PS 333 class well into 2014. In April 2014, Choi's father emailed administrators at Reed about the lack of response to Choi's requests, "regardless of . . . Andrew not being a student at this time." [49 at ¶ 105]. Reed did not open any

investigation in response to Choi's father's email. [*Id.* at ¶ 106]. In an early April 2014 email Rajali told Choi that the faculty code indicated Choi could complete his degree by returning to Reed for one semester and submitting another thesis on a new topic. [*Id.* at ¶ 110]. Choi choose not to return to Reed in 2014 to submit another thesis. [*Id.*at ¶ 113].

**LEGAL STANDARDS**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence, that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations, *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)), or "unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In Oregon, "[t]o state a breach of contract claim, [a] plaintiff must allege the existence of a contract, 'its relevant terms, plaintiff's full performance and lack of breach, and defendant's breach resulting in damage to plaintiff.'" *Slover v. Oregon State Bd. of Clinical Social Workers*, 144 Or. App. 565, 570-71 (1996) (citing *Fleming v. Kids and Kin Head Start*, 71 Or. App. 718, 721 (1985). Unjust enrichment is an equitable remedy. *Comcast of Or. II, Inc. v. City of Eugene*, 346 Or. 238, 253, 209 P.3d 800, (2009). The "generally accepted test which determines whether a recovery may be had is whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts a claim." *Id.* at 253-54.

**DISCUSSION**

In Count I of his Amended Complaint, Choi asserts that Reed breached the contracts it made with him upon his enrollment at the College. In Count II, he alleges Reed's breach of its policies resulted in the College's unjust enrichment—Choi paid the College about $250,000 but did not receive a degree.

As an initial matter, I GRANT Choi's Motion to Amend or Correct his Deposition Transcription [84], which he filed shortly after oral argument on Reed's summary judgment motion. I have considered all the portions of Choi's deposition transcript to which he cited in his opposition Reed's Motion.

I.  **Breach of Reed's Disability Accommodation Policy**

Reed's Disability Accommodation Policy in effect during the 2013-14 school year stated that "[u]pon receipt of a request for services and the appropriate documentation, student services works with the student to provide or establish the most suitable and reasonable accommodations or services" given the situation. [49 at ¶ 17 (quoting Reed's Disability Accommodation Policy)]. Choi testified he could not recall any instance in which a professor denied him a requested accommodation. [63-1 at pp. 145:8-13, 152:13-17, 155:7-15, 111:9-112:7, 139:3-16, 140:8-19]. Choi argues, however, that a genuine issue for trial remains because: (1) the College required him to request accommodations directly from his professors and he "had a lot of trouble reaching out for help" until his sophomore year; and (2) he felt that the requested accommodations he received were "never completely sufficient." [63-1 at pp. 21:7-19, 21:22-22:4]. He contends also that his thesis committee's failure to reschedule his oral exam and imposition of additional obligations on him (re-writing his thesis) after he missed his oral exam due to a nosebleed creates a genuine issue of fact as to whether Reed violated its disability accommodation policy. [85 at p.

27:17-22 (describing the failure to reschedule Choi's oral exam as the "crux of the accommodation claim")].

Even viewing the facts in a light most favorable to him, Choi has not produced evidence of a genuine issue for trial on this claim. Reed's policy promised reasonable accommodation, and the record reflects that Choi received every accommodation he requested. [63-1 at pp. 145:8-13, 152:13-17, 155:7-15, 111:9-112:7, 139:3-16, 140:8-19; *see also* [49, Ex. C, p. 4 (stating Daby "supported any accommodation I requested" and that while Daby's questions about whether ADHD truly affected performance "drew my ire, it was forgivable—I had access to the accommodations I requested, and nothing else mattered."]. There is no violation of a contract when a party receives what the agreement promises.

Similarly, even assuming Choi's thesis committee's decision not to reschedule his oral exam could be attributed to the College, the failure to reschedule does not create an issue for a jury. The Disability Accommodation Policy promises to provide reasonable accommodations for documented disabilities, which Choi understood. [49 at ¶ 17 (quoting Reed's Disability Accommodation Policy, which states "[u]pon receipt of a request for service *and the appropriate documentation*) (emphasis added))]; [63-1 at p. 112:5-7 (stating Choi assumed he provided medial information each semester to support a request for accommodation)]. The record does not show that Choi's hereditary hemorrhagic telangiectasia was a documented disability.[1]

Reed is also entitled to summary judgment on Choi's allegations that various Reed faculty and administrators violated the College's Disability Accommodation Policy by not responding to his requests for extensions after the end of the fall 2013 semester when he was no

---

[1] In response to a question from Reed's counsel about documentation for this disability during his June 2018 deposition, Choi responded, "we're working on it." [84-2 at pp. 309:16-310:2].

longer a student at Reed. As Choi himself points out, the Disability Accommodation Policy is a contract between the College and enrolled students. Thus, events that happened after Choi left Reed cannot form the basis for his breach of contract claim.

Finally, Choi's briefing refers to the "meager record" and my denial of his Rule 56(d) Motion seeking to delay his response to Reed's Motion until after he took at 30(b)(6) deposition of the College. [72 at pp. 1-2; 69 at pp. 14-16]. Additional discovery about Reed's policies regarding accommodating students with disabilities would not support Choi's opposition to summary judgment on this claim. First, even assuming Choi presented evidence about the College's "policies," this would not help him meet his burden of showing there remains a genuine issue for trial because the undisputed record would still establish that Choi's professors granted every request for accommodation for a documented disability that he made. Second, the undisputed facts show that, despite receiving every accommodation he requested, Choi did not meet the requirements of his courses.

Specifically, after Reed granted Choi an extension of time to submit a revised thesis from December 13, 2013, to January 27, 2014, he falsely told faculty and administrators that he was in Bangladesh during the extension and very busy writing. [63-1 at p. 36:21-25, 49:5-15, 298:1-16]. In fact, Choi was in Massachusetts "barely working on [his]thesis." [*Id.* at p. 48:24-49: 15]. Despite acknowledging that the thesis he initially submitted was "hardly the document I wanted submitted," Choi spent about ten hours at most on this thesis because he felt he had "already passed" and planned to submit basically more or less the same thesis again." [*Id.* at Ex. 34, and 131: 8-15, 127:2-9]. Choi turned in a thesis that he was unhappy with and felt was "absolutely not" a good product. [*Id.* at 180:24-181:2]. Choi was similarly blasé about completing meeting the requirements of this PS 333 class that Gronke had given him an extension of time to

complete; his plan was to "submit whatever [he] had to Paul and then . . . hope for the best." [*Id.* 181:7-18]. Choi, however, never even turned in this work. [*Id.*at 183:9-12]. For these reasons, I again find that additional discovery was not essential to Choi's opposition.

## II.     Breach of Reed's Sexual Harassment Policy

Reed's Sexual Harassment Policy in effect when Choi and Daby had their intimate relationship prohibited sexual harassment and recognized that sexual harassment by a faculty member of a student is particularly serious. [49 at ¶ 31]. Choi alleges that Reed violated the Sexual Harassment Policy because Daby, "as a Reed employee" engaged in a sexual relationship with him while she was "his professor and thesis advisor." [*Id.*at ¶ 129 on p. 36].[2]

Even viewing the facts in a light most favorable to him and assuming the then-effective Sexual Harassment Policy created a contract, Choi cannot meet his burden of producing evidence establishing that a genuine issue for trial remains on this claim. The policy quoted in Choi's complaint does not prohibit consensual student-faculty sexual relationships, and Choi testified he consented to his sexual encounters with Daby. [63-1 at p. 91:2-5]. Also fatal to Choi's claim is his failure to tell Reed about his encounters with Daby. The College could not protect Choi from conduct about which it did not know. Thus, to fully perform under any contract he had with Reed to protect him from sexual relationships with professors, Choi would have had to notify the College of the conduct when it occurred. Choi, however, did not tell anyone associated with Reed about his intimate relationship with Daby until October 2015, long after the relationship ended and well after the College could have acted to protect him. [63-1 at p. 105:9-23; 84-2 at p. 101:14-17].

---

[2] There is more than one ¶ 129 in the First Amended Complaint.

8 – OPINION AND ORDER

Choi also argued for additional discovery on this claim before responding to Reed's Motion. More information about the process for reporting complaints of faculty sexual misconduct and how Reed responds to such complaints was not necessary for his opposition to this claim. Indeed, even if Choi had presented such additional information, it would not have shown a genuine issue for trial in light of the policy's failure to prohibit consensual student-faculty sexual relationships and his own failure to notify Reed of his encounters with Daby when they occurred, or at least when he was a student.

**III.     Breach of Reed's Academic Conduct Policy and the Corbett Grant Contract**

Choi's First Amended Complaint repeats claims of breach of the academic conduct policy and the Corbett Grant contract that he initially asserted against Daby individually. [49 at ¶¶ 37-38 and ¶¶ 134-136 on pp. 37-38). I dismissed these claims with prejudice on July 20, 2018, when I granted Daby's Motion for Summary Judgment. [47]. Choi cannot revive these claims by asserting the same theories against Reed. Specifically, nothing in the Corbett Grant "contract" required attribution. [48 at p. 28:16-25]. Choi's academic misconduct claims against Daby stemmed from her failure to credit him for any of the research and writing he performed for her while he was at Reed. Choi conceded that these claims, which he called a conversion claim in his original Complaint, failed because an Oregon conversion claim cannot apply to theft of intellectual property. [*Id.* at 29:1-5]. Making these same allegations against Reed in his First Amended Complaint does not supply the necessary elements to make them viable. Accordingly, Reed is entitled to judgment as a matter of law on these claims.

**IV.     Breach of Reed's Non-Discrimination Policy**

Choi alleges that the same conduct that violated the Sexual Harassment Policy and the Disability Accommodation Policy also breached the College's non-discrimination policy. The

non-discrimination policy cited in Choi's First Amended Compliant summarizes the College's general compliance with its obligation under federal and state law. [49 at ¶ 11]. Even when viewed in a light most favorable to Choi, the non-discrimination policy does not create an agreement between Choi and the College to prevent student-faculty sexual relationships or to accommodate undocumented disabilities.

V.      **Breach of Reed's Honor Principle**

Choi alleges the College violated the Honor Principle by actions of faculty members and administrators after Choi was no longer a student at Reed—failing to respond to requests for extensions of time and discouraging Choi from bringing grievances against his professors for failing to respond to his extension requests. Like Reed's other policies, the Honor Principle applies only to students and events that happened after Choi left Reed cannot form the basis for a claim for violation of the honor principle.

Even assuming, however, that the Honor Principle applied when Choi was no longer enrolled, this claim would fail. Choi asserts that the Honor Principle is defined in a resolution adopted by the school in 2000. [49 at ¶ 14]. The resolution, as quoted in Choi's First Amended Complaint declares the College's commitment to "responsible and honorable conduct in academic and community affairs." [*Id.*] This language, however, is too broad and general to bind the College to respond to requests for extension of time or to refrain from discouraging complaints against faculty members. *Breyer v. Pac. Univ.*, No. 3:17-cv-0036-AC, 2007 WL 3429395 (Aug. 9, 2017) (noting "a claim for the breach of a student-college contract requires identification of 'an identifiable contractual promise that the defendant failed to honor'").

///

///

## VI. Choi's Unjust Enrichment Claim

Choi asserts that it is unjust for Reed to retain the approximately $250,000 he paid it in tuition because he did not receive a degree. Here, it is not unjust for Reed to retain the benefit it got from Choi's tuition. *Robinowitz v. Pozzi*, 127 Or. App. 464, 467 (1994) (noting one of the elements of an unjust enrichment claim is a plausible allegation that it would be unjust to allow retention of the benefits). The record shows that Choi did, in fact, receive educational services from Reed in exchange for his tuition. *Njoroge v. Vocational Training Insts., Inc.*, No. 2:16-cv-00951-RAJ, 2017 WL 4700297 (Oct. 19, 2017). Choi stated, "[s]hort of a diploma, Reed gave me everything I could have asked for." [49, Ex. C, p. 5]. Accordingly, I find Reed is entitled to judgment as a matter of law on Choi's unjust enrichment claim.

## CONCLUSION

I GRANT Choi's Motion to Amend/Correct his Deposition Transcript [84]. I GRANT Reed's Motion for Summary Judgment [62] and dismiss this case with prejudice.

IT IS SO ORDERED.

DATED this  4th   day of February, 2019.

*Michael W. Mosman*
MICHAEL W. MOSMAN
Chief United States District Judge